J-A18015-17

2017 PA Super 327

M.J.S.                                    :  IN THE SUPERIOR COURT OF
                                          :       PENNSYLVANIA
            Appellant                     :
                                          :
            v.                            :
                                          :
B.B.                                      :
                                          :
            v.                            :
                                          :       No. 37 WDA 2017
B.B.                                      :

Appeal from the Order Dated December 6, 2016
In the Court of Common Pleas of Clearfield County
Civil Division at No(s): 2015-1290-CD

BEFORE:  BOWES, LAZARUS, AND OTT, JJ.

OPINION BY BOWES, J.:                          FILED OCTOBER 17, 2017

M.J.S. ("Father") appeals the trial court order entered on December 6,

2016, wherein the trial court awarded primary physical custody of his son,

L.M.S., to the maternal grandmother, B.B. ("Grandmother"). Father

challenges Grandmother's standing to pursue custody, assails the trial

court's miscomprehension of the procedural posture of the case, and

complains that the court ignored the statutory presumption favoring parents

over third parties. As we agree with the latter two contentions, we reverse

and remand for further proceedings.

L.M.S. was born during January 2010 of Father's relationship with

B.M.B. ("Mother"). For the first five years of L.M.S.'s life, he lived with

Mother at Grandmother's home in Clearfield County, Pennsylvania. Father, who resides approximately one-hour away in Dubois, Pennsylvania, exercised partial physical custody of his son on alternating weekends pursuant to an informal custody arrangement.

On August 19, 2015, Mother informed Father through an intermediary that she intended to enroll in an inpatient detoxification program at DuBois Regional Medical Center and that Father should assume custody of their son. Father took physical custody of L.M.S., and approximately one week later, he filed a petition for primary physical custody. The trial court scheduled a custody conference for September 22, 2015, and on September 25, 2015, it ordered that Mother and Father each pay $250.00 for compulsory custody mediation.

In the interim, Father enrolled then-five-year-old L.M.S. in kindergarten in the school district near his residence, and filed an emergency petition alleging that Mother continued to abuse illicit drugs. Father asserted that the purpose of the emergency petition was "to ensure that the child is protected and remains in school until such time as a hearing can be held." Emergency Petition for Special Relief, 9/15/15, at 2. The trial court granted the emergency petition summarily, awarded Father temporary physical custody, and scheduled a hearing on the petition for October 5, 2015. Mother failed to respond to either the emergency petition or Father's petition for primary physical custody.

On September 23, 2015, Grandmother filed an emergency petition to intervene wherein she requested primary physical custody of L.M.S. Grandmother invoked 23 Pa.C.S. § 5324 as the basis to pursue legal and physical custody of her grandson. Grandmother asserted that she "has always been the primary caretaker . . . [and] has provided for all of the financial, emotional and physical needs of the child." Petition for Special Relief, 9/23/15, at 2. Essentially, Grandmother asserted that she has stood in loco parentis since the child's birth. The trial court immediately granted Grandmother's petition to intervene, rescinded its interim custody order in favor of Father, and awarded Grandmother emergency custody of L.M.S. pending the hearings on the parties' dueling petitions for emergency relief. The trial court neglected to state its basis for finding that Grandmother had standing to pursue primary custody, and it failed to rule upon Father's ensuing motion for reconsideration of the standing issue.

The court ultimately denied Father's emergency petition for special relief and entered a temporary order directing that Grandmother maintain primary physical custody of L.M.S. subject to Father's periods of partial custody. The court directed that Grandmother join the compulsory mediation process and amended its prior order so that responsibility for the $500.00 mediation fee would be shared equally among the three parties.

On March 11, 2016, the trial court held a custody trial on Father's petition for primary custody. Father testified on his own behalf and

presented the testimony of his step-father, fiancée, and future father-in-law. Mother testified and called L.M.S.'s kindergarten teacher to the stand to discuss the child's progress in the Clearfield School District. Grandmother testified on her own behalf. The trial court conducted an in camera interview with L.M.S. off the record.

Approximately nine months after the hearing, on December 6, 2016, the trial court entered a final order and opinion awarding all three parties shared legal custody, granting Grandmother primary physical custody, and providing Father periods of partial physical custody.[1] Mother was awarded undesignated periods of physical custody to be exercised during Grandmother's primary custody.

This timely appeal followed. Father filed a concise statement of errors complained of appeal pursuant to Pa.R.A.P. 1925(b). He raised five issues, which he reiterates on appeal as follows:

> I.    I. Whether the Trial Court abused its discretion in granting Grandmother Emergency Leave to Intervene and Emergency Custody?

_____

[1] We disapprove of the trial court's nine-month delay in issuing its opinion and order resolving the child custody litigation. Our Supreme Court has directed that courts set cases involving child custody for expedited disposition. We understand that some custody matters require post-hearing briefs and additional arguments. Likewise, we recognize the limitations of a trial court's flexibility in scheduling. However, the nine-month lag between the custody hearing and final disposition is unacceptable. See In re T.S.M., 71 A.2d 251, at 261 n.21 (Pa. 2013) ("The repeated delays in the courts below are not fully explained and are unacceptable").

II.     Whether the Trial Court erred as a matter of law in finding that Grandmother had standing pursuant to 23 Pa.C.S. § 5324?

III.    Whether the Trial Court abused its discretion in finding that the factors set forth in 23 Pa.C.S. § 5328 favored a placement of primary physical custody with Grandmother?

IV.     Whether the Trial Court erred as a matter of law in finding that Father had a burden to sustain, where 23 Pa.C.S. § 5327(b) clearly states that there is a presumption custody should be with a parent over a third party and therefore, Grandmother had the burden of proof?

V.      Whether the Trial Court abused its discretion in finding that Grandmother met her heavy burden of proof to overcome the presumption set forth in 23 Pa.C.S. § 5327(b)?

Father's brief at 10-11.

At the outset, we address Father's challenge to Grandmother's standing. This argument implicates the first two issues that Father raises in his statement of questions involved. We address those issues seriatim.

As a threshold contention, Father asserts that the trial court engaged in ex parte review of Grandmother's emergency petition to intervene and assume physical custody. While artless in its presentation, Father's argument essentially assails the trial court's grant of special relief to Grandmother without a hearing. Oblivious to the irony of his contention, considering the fact that the trial court previously granted him special relief in the identical manner, Father implies that the trial court was required to schedule a hearing on the emergency petition prior to awarding Grandmother emergency custody.

Father's claim fails for at least two reasons. First, he neglects to support his legal argument with citation to any authority beyond Pa.R.C.P. 1915.13, the rule governing special relief. Thus, the assertion is underdeveloped. Moreover, contrary to Father's posturing, Rule 1915.13 does not establish any specific procedure for the trial court to impose temporary special relief and, critically, it certainly does not require that the trial court schedule a hearing or listen to argument before special relief is awarded. Indeed, pursuant to Rule 1915.13, the court may grant relief sua sponte. See Pa.R.C.P. 1915.13 ("At any time after commencement of the action, the court may on application or its own motion grant appropriate interim of special relief[, including] the award of temporary legal or physical custody[.]").

Instantly, we observe that Father does not assert that he was not provided notice of the emergency petition or that Grandmother had an extrajudicial communication with the trial court. To the contrary, the record confirms that Grandmother filed the emergency petition with the trial court and upon review of the allegations in the petition, the trial court granted interim relief as sanctioned by Rule 1915.13. Accordingly, for both of the foregoing reasons, we reject Father's bare assertion that the trial court erred in granting what he styled as ex parte relief.

Next, Father argues that the trial court erred in concluding that Grandmother stood in loco parentis to L.M.S. and that, absent that

- 6 -

designation, Grandmother cannot establish the statutory grounds for standing to pursue custody of L.M.S. For the following reasons, we disagree.

We review the trial court's determination of standing de novo, and our scope of review is plenary. K.L. v. S.L., 157 A.3d 498, 504 (Pa.Super. 2017) ("Threshold issues of standing are questions of law; thus, our standard of review is de novo and our scope of review is plenary.").

The Child Custody Law provides the following individuals standing to pursue any form of physical custody or legal custody:

(1) A parent of the child.

(2) A person who stands in loco parentis to the child.

(3) A grandparent of the child who is not in loco parentis to the child:

(i) whose relationship with the child began either with the consent of a parent of the child or under a court order

(ii) who assumes or is willing to assume responsibility for the child; and

(iii) when one of the following conditions is met:

(A) the child has been determined to be a dependent child under 42 Pa.C.S. Ch. 63 (relating to juvenile matters);

(B) the child is substantially at risk due to parental abuse, neglect, drug or alcohol abuse or incapacity; or

(C) the child has, for a period of at least 12 consecutive months, resided with the grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, in which case the action must be filed within six months after the removal of the child from the home.

23 Pa.C.S. § 5324.

While Father accurately highlights that the trial court neglected to expressly articulate the statutory basis of Grandmother's standing to pursue custody of L.M.S., Grandmother consistently asserted that she stood in loco parentis to her grandson. Moreover, it is evident from the trial court's acceptance of Grandmother's assertions in the petition to intervene and its analysis of the best-interest factors relating to the performance of parental duties, that it found that Grandmother attained in loco parentis status. Specifically, without confronting the standing issue directly, the court determined, "Evidence presented at the [c]ustody [t]rial indicated . . . Grandmother performed all of the parental duties for [L.M.S.'s] daily routines and insured the care of the [c]hild since birth." Trial Court Opinion, 12/6/16, at 2. Accordingly, we examine Father's challenge to Grandmother's standing pursuant to the in loco parentis proviso of § 5324(2).

As we recently reiterated in K.W., supra, at 504-505, "The term in loco parentis literally means 'in the place of a parent.'" (quoting Peters v. Costello, 891 A.2d 705, 710 (Pa. 2005)). There are two components to in loco parentis standing: (1) "the assumption of parental status[;] and [(2)] "the discharge of parental duties." Id at 505. As it relates to this aspect of Father's complaint, we highlight that, "in loco parentis status cannot be

achieved without the consent and knowledge of, and in disregard of, the wishes of a parent." (quoting E.W. v. T.S., 916 A.2d 1197, 1205 (Pa. 2007)).

Father argues that Grandmother's relationship with L.M.S. did not amount to in loco parentis standing. The crux of this contention is that, although L.M.S. resided in Grandmother's home for his entire life, Grandmother shared parental responsibilities with Mother. Thus, he asserts that Grandmother's involvement with her grandson falls short of either (1) assuming a parental relationship or (2) discharging parental duties. Again, we disagree.

First, the fact that Grandmother shared with Mother the responsibility of raising L.M.S. is irrelevant. Indeed, in D.G. v. D.B., 91 A.3d 706, 709 (Pa.Super. 2014), this Court recognized, "[w]hen a party asserting in loco parentis status lives with the child and a natural parent as a family unit, our courts have held that the party has standing." To be clear, this is not a case where Grandmother was essentially a glorified baby-sitter. To the contrary, the certified record established that, by satisfying L.M.S.'s daily physical, emotional, and financial needs for his entire life, Grandmother assumed an enduring role that was much more significant than a frequent caretaker. Compare the facts of the instant case with Argenio v. Fenton, 703 A.2d 1042 (Pa.Super. 1997), where this Court denied in loco parentis status to a grandparent who merely provided daily child care. Thus, contrary to

- 9 -

Father's assertions, the evidence demonstrating that Grandmother shared parental responsibilities with Mother when they lived together in Grandmother's home militates in favor of in loco parentis status rather than against it. See T.B. v. L.R.M., 786 A.2d 913 (Pa. 2001) (former partner stood in loco parentis because she shared day-to-day child rearing responsibilities with biological mother, co-owned the family residence, and maintained exclusive responsibility for child when biological mother was away from home). In sum, Pennsylvania jurisprudence simply does not support the contention that Grandmother was required to assume the role of L.M.S.'s sole parental figure in order to attain in loco parentis status.

Moreover, the record supports the trial court's determination. One of the primary considerations in determining in loco parentis status is the effect of the third-party relationship upon the child's best interest. As our Supreme Court explained,

> while it is presumed that a child's best interest is served by maintaining the family's privacy and autonomy, that presumption must give way where the child has established strong psychological bonds with a person who, although not a biological parent, has lived with the child and provided care, nurture, and affection, assuming in the child's eye a stature like that of a parent. Where such a relationship is shown, our courts recognize that the child's best interest requires that the third party be granted standing so as to have the opportunity to litigate fully the issue of whether that relationship should be maintained even over a natural parent's objections.

T.B., supra, 917.

Instantly, Grandmother, Mother, and L.M.S. lived together five years as an intact family unit and Grandmother either shared or assumed sole parenting responsibility for the entirety of the child's life. Moreover, Mother and Grandmother both testified that they shared parenting responsibilities. N.T., 10/5/15 (Vol. 1), at 29-30, N.T., 3/11/16, at 137. Furthermore, as it relates to day-to-day child rearing, the certified record confirms that Grandmother fed, bathed, and entertained L.M.S. daily, attended doctors' appointments, and transported him to kindergarten class in Clearfield. N.T., 3/11/16, at 136-139, 154-155. Grandmother also assisted L.M.S. financially, and she has consistently been a stabilizing force in the child's life and ensured his safety. Id. at 139-140, 154.

As a final component of the standing issues, we observe that Father does not specifically assert that Grandmother was precluded from assuming in loco parentis status in contravention of his wishes. Nevertheless, he cited that legal principle in brief. To the extent that we can interpret his reference as leveling the assertion implicitly, no relief is due. Stated plainly, Father failed to oppose Grandmother's assumption of parental duties. Instead, he allowed Grandmother to share the parental responsibilities with Mother. Father not only declined to protest Grandmother's emergent role, he did not attempt to intercede in Grandmother's assumption of parental duties, and he failed to perform any parental obligations beyond exercising partial physical custody. Through his own inaction, Father acquiesced to the development of

the in loco parentis relationship between Grandmother and L.M.S. As the certified record confirms that Grandmother shouldered at least a shared role of carrying out the day-to-day care of L.M.S. with Father's implicit approval, it belies the inference that she assumed parental status in defiance of Father's wishes. Stated another way, by failing to act while Grandmother raised his son, Father acted in a manner consistent with his consent to her in loco parentis status. See In re C.M.S., 884 A.2d 1284 (Pa.Super. 2005) (birth father demonstrated consent by failing to be involved in child's life for one year). As Grandmother stood in loco parentis to L.M.S., she had standing to pursue custody pursuant to § 5324(2).[2]

Having found that the trial court did not err in concluding that Grandmother stood in loco parentis, we next address Father's substantive complaints. We review the trial court's custody order for an abuse of discretion. S.W.D. v. S.A.R., 96 A.3d 396, 400 (Pa.Super. 2014). We defer to the trial court's factual findings that are supported by the record and its credibility determinations. Id. This Court will accept the trial court's

_____

[2] Assuming, arguendo, that Grandmother failed to attain in loco parentis status, she has standing to pursue custody of L.M.S. pursuant to 23 Pa.C.S. § 5324(3)(i-iii)(B), insofar as her relationship with L.M.S. began with Mother and Father's consent, she has assumed responsibility for L.M.S. since birth, and Mother's chronic drug abuse placed L.M.S. substantially at risk. Although Father complains that Grandmother never alleged that her grandson was at risk due to Mother's substance abuse, the certified record is replete with evidence of Mother's struggle with drug addiction and Grandmother's efforts to act as a stabilizing force against its harmful effects.

conclusion unless it is tantamount to legal error or unreasonable in light of the factual findings. Id.

In awarding primary custody to Grandmother, the trial court reviewed the following best interest factors to consider when awarding any form of custody:

(a) Factors. – In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

In weighing the enumerated factors, the trial court treated the custodial roles of Grandmother and Mother collectively. Bolstered by Mother's contribution, the trial court found that all but six factors weighed in favor of granting Grandmother primary physical custody. The court determined that factors two, eight, nine, eleven, and fourteen were

inapplicable. Factor thirteen, relating to the conflict among the parties, was deemed neutral. None of the court's considerations militated in favor of Father.

Father challenges the legitimacy of the trial court's analysis of the statutory best-interest factors. This argument has three components, the court: (1) failed to differentiate between Mother and Grandmother in considering the § 5328(a) factors; (2) neglected to apply the statutory presumption in favor of a parent over a third party pursuant to § 5327; and (3) misconstrued the procedural posture of the custody litigation and placed the burden of proof upon Father to "convince the Court that the benefits of the proposed modification are in the best interest of Child." Trial Court Opinion and Order, 12/6/16, at 10. Both Mother and Grandmother ignored the court's misapplication of the applicable framework and failed to confront any of these errors directly in their respective briefs. As explained infra, we agree with Father on all three accounts and conclude that the trial court's missteps are tantamount to reversible error.

First, we observe that the trial court erred in employing a wholesale consideration of the collective roles of Mother and Grandmother. The instant custody dispute is between Father and Grandmother, who filed countervailing custody petitions. Mother transferred custody to Father and then neglected to assert her custody rights. She merely acquiesced in Grandmother's intervention and supported her claim for primary physical

custody of L.M.S. Thus, in considering the relevant statutory factors in determining L.M.S.'s best interests, the trial court was required to weigh the merits of Father and Grandmother's positons independently from that of Mother.

We concede that the trial court was free to consider Mother's presence in Grandmother's home in addressing factors two, five, twelve, fourteen, fifteen and sixteen. These considerations would inure to Grandmother's benefit as to the factors concerning Mother's existing relationship with L.M.S., and her availability to perform child care, and ostensibly, the catchall of any relevant factor under § 5328(a)(16). However, the trial court included Mother in its consideration of the factors that favored Grandmother, but omitted her role in the household if it hindered Grandmother's claim. For example, the court's reflection upon Mother's history of substance abuse and her mental and physical health would necessarily militate in favor of Father. We find that the trial court's manipulation of Mother's influence upon its best interest analysis constitutes reversible error. Upon remand, the trial court is directed to limit its consideration of Mother's presence in Grandmother's home to the specific factors where her presence is relevant, and to account for her influence whether it inures to Grandmother's benefit or to Grandmother's detriment.

Next, we address Father's claim assailing the trial court's assessment of the proper burden of proof and evidentiary presumption. The Child Custody Law provides as follows:

5327. Presumption in cases concerning primary physical custody

(a) Between parents.--In any action regarding the custody of the child between the parents of the child, there shall be no presumption that custody should be awarded to a particular parent.

(b) Between a parent and third party.--In any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence.

(c) Between third parties.--In any action regarding the custody of the child between a nonparent and another nonparent, there shall be no presumption that custody should be awarded to a particular party.

23 Pa.C.S. § 5327.

Instantly, the trial court undeniably ignored the presumption favoring Father over Grandmother pursuant to § 5327(b). The presumption is rebuttable by clear and convincing evidence, which we have defined as presenting evidence "that is so clear, direct, weighty, and convincing so as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." V.B. v. J.E.B., 55 A.3d 1193, 1199 (Pa.Super. 2012) (quoting In re B.C., 36 A.3d 601, 605–606 (Pa.Super. 2012)).

Preliminarily, we observe that the fact that Grandmother attained standing through in loco parentis status does not alter her role as a third-party challenger to Father's request for primary physical custody. As suggested by our Supreme Court's discussion in T.B., supra, in loco parentis status merely provides a third party an opportunity to establish that maintaining that relationship supersedes the birth parent's opposition. The High Court observed, "Where [an in loco parentis] relationship is shown, our courts recognize that the child's best interest requires that the third party be granted standing so as to have the opportunity to litigate fully the issue of whether that relationship should be maintained even over a natural parent's objections." Id. at 917 (emphasis added). Significantly, neither the Supreme Court's discussion in T.B. nor the text of § 5327(b) indicates that in loco parentis status effectively places a third-party on equal footing with a birth parent. To the contrary, § 5327 provides that the presumption applies "[i]n any action regarding the custody of a child between a parent of the child and a nonparent[.]" 23 Pa.C.S. § 5327(b) (emphasis added). If our legislature desired to carve an exception to the presumption when the nonparent attained in loco parentis status, it could have done so; however, it did not. Thus, for all of the foregoing reasons, the trial court erred in failing to apply the presumption in Father's favor pursuant to § 5327(b).

Moreover, in addition to ignoring the rebuttable presumption in favor of Father, the trial court exacerbated that mistake by improperly saddling

Father with the burden of proof. Our ensconced principles of custody law provide that where, as here, the trial court is required to fashion the initial award of primary physical custody, both parents stand on equal footing and neither bears the burden of proof. Collins v. Collins, 897 A.2d 466, 472 (Pa.Super. 2006) ("In the absence of a pre-existing custody order, both parents stand on equal footing, sharing the burden of production and persuasion"); see also 23 Pa.C.S. § 5327(a) (no presumptions between parents).

Instantly, the trial court misconstrued the procedural posture of this case as stemming from a petition to modify an existing child custody order and explicitly imposed the burden of proof upon Father. However, there was neither a formal custody arrangement between Mother and Father, nor a final custody order based upon the requisite best-interests analysis. In reality, Father initiated this custody litigation by filing a petition for primary physical custody.

We observe that the trial court's misapprehension of the procedural posture is understandable insofar as Father did not commence the custody proceedings by filing a verified custody complaint as required by Pa.R.C.P. 1915.3., a procedural misstep which Mother and Grandmother failed to challenge. However, notwithstanding Father's procedurally-incorrect request for primary physical custody, the fact remains that the parties have never been subject to a final custody order, and therefore, Mother and Father

continue to stand on equal footing as to demonstrating their son's best interests pursuant to § 5328(a). See Collins, supra. Father's error did not alter the nature of the custody litigation.

In sum, the trial court's best-interest analysis is contrary to at least three entrenched principles of our custody jurisprudence. Accordingly, we reverse the order awarding Grandmother primary physical custody of L.M.S. and remand the matter for a best-interests determination that conforms with the Child Custody Law and prevailing precedent. While Father entreats that this Court decide the case on its merits and award him primary physical custody, we decline to analyze the relevant statutory best-interests factors in the first instance. Although this Court has engaged in merits determinations based upon the certified record in limited situations where the outcome is obvious, such is not the case herein. Contrary to Father's protestations, it is not clear from the certified record that the presumption in his favor is insurmountable in light of the testimony that Grandmother either performed or shared all aspects of raising L.M.S. since birth. If accepted as true, these allegations could form the clear and convincing evidence required to rebut the statutory presumption. We leave that determination to the trial court, who is the ultimate arbiter of fact.

Order reversed. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/17/2017</u>