J-S47014-18

2018 PA Super 241

| M.L.S. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| T.H.-S. | : | |
| | : | |
| Appellant | : | No. 302 WDA 2018 |

Appeal from the Order Entered December 19, 2017
In the Court of Common Pleas of Fayette County
Civil Division at No(s):  No. 401 of 2016, G.D.

BEFORE:   OLSON, J., McLAUGHLIN, J., and STRASSBURGER*, J.

OPINION BY OLSON, J.:                          **FILED AUGUST 29, 2018**

T.H.-S. ("Mother") appeals from the December 19, 2017 order granting her and M.L.S. ("Stepfather") joint legal custody of K.M.H. ("Child").[1]  We hold that Stepfather, a member of our nation's armed forces stationed away from Mother and Child, stands *in loco parentis* to Child.  Accordingly, we affirm.

The factual background of this case is as follows.  In December 2005, Mother gave birth to Child.  C.H., Mother's late husband, was Child's biological father.  After C.H.'s death, Mother married Stepfather.  In July 2013, A.S. was born of this matrimonial bond.  The parties were in the process of obtaining a divorce at the time the instant case was initiated.[2]

---

[1] The order also granted Stepfather partial physical custody of Child.

[2] Child was 11 years old when this case was initiated.

---

*   Retired Senior Judge assigned to the Superior Court.

For the past 15 years, Stepfather has served as an active duty member of the United States Navy. While Mother lived in Western Pennsylvania, Stepfather was stationed in Virginia, Maryland, and, at the time of the evidentiary hearing, North Carolina. Stepfather visited Mother, A.S., and Child for a total of between four and five weeks per year (including both weekends and vacation) while on leave from the Navy.

On May 2, 2017, Stepfather filed a complaint seeking custody of Child. Mother moved to dismiss the complaint arguing that Stepfather lacked standing. After an evidentiary hearing, the trial court denied Mother's motion to dismiss on September 6, 2017. Mother filed a notice of appeal which this Court quashed as being taken from an interlocutory order. On December 19, 2017, the trial court entered a final custody order. Mother filed a notice of appeal on February 20, 2018.

Mother presents one issue for our review:

Did the [t]rial [c]ourt commit an error of law by ruling that [Stepfather stands] *in loco parentis* [to Child] . . . ?

Mother's Brief at 2.

Prior to addressing the merits of Mother's appeal, we *sua sponte* consider if we have jurisdiction over this appeal. *See A.J.B. v. A.G.B.*, 180 A.3d 1263, 1270 (Pa. Super. 2018) (citation omitted). It is axiomatic that this Court lacks jurisdiction over untimely appeals. *Commonwealth v. Duffy*, 143 A.3d 940, 944 (Pa. Super. 2016). In order to be timely, a notice of appeal must be filed within 30 days after entry of the appealable order.

Pa.R.A.P. 903(a). Mother filed her notice of appeal 63 days after entry of the final, appealable order. Nonetheless, our review of the certified record indicates that the Fayette County Prothonotary failed to note on the docket that notice of the December 19, 2017 order was served pursuant to Pennsylvania Rule of Civil Procedure 236. Hence, there was a breakdown in the court system and we have jurisdiction over this appeal. **See Fischer v. UPMC Nw.**, 34 A.3d 115, 121 (Pa. Super. 2011) (citations omitted).

Having determined that we have jurisdiction over this appeal, we turn to the merits. Mother argues that Stepfather lacked standing to file the instant custody action. Issues of standing are pure legal questions; therefore, our standard of review is *de novo* and our scope of review is plenary. **K.W. v. S.L.**, 157 A.3d 498, 504 (Pa. Super. 2017) (citation omitted). "The following individuals may file an action under this chapter for any form of physical custody or legal custody . . . (2) [a] person who stands *in loco parentis* to the child." 23 Pa.C.S.A. § 5324. "The term *in loco parentis* literally means in the place of a parent. There are two components to *in loco parentis* standing: (1) the assumption of parental status and (2) the discharge of parental duties." **M.J.S. v. B.B.**, 172 A.3d 651, 656 (Pa. Super. 2017) (cleaned up).

Stepfather presented overwhelming evidence to support the trial court's finding that he had standing to pursue custody of Child. Stepfather spoke with Child on the telephone approximately every other day when he was in the United States and as often as permitted by his superiors when deployed

to the Middle East. **See** N.T., 8/29/17, at 76. During these telephone calls, Stepfather kept abreast of Child's grades and medical conditions. **See id.** at 12, 76-77.

Stepfather frequently traveled to Western Pennsylvania to spend time with Mother and Child. During these visits, Stepfather and Mother both read Child bedtime stories. **Id.** at 77. While in Western Pennsylvania, Stepfather also assisted Child with his homework. **See id.** at 36. He attended Child's parent-teacher conferences with Mother. **Id.** at 37. During a parent-teacher conference, Stepfather learned that another student was bullying Child and assisted Mother in addressing the issue. **Id.** Although Stepfather was unable to attend career day at Child's school, he made special arrangements with Child's teacher to present about his career in the military. **Id.** at 64. Stepfather also taught Child the basics of male grooming, *e.g.*, how to shave, put on foot powder, and put on deodorant. **Id.** at 38.

As a former musician, Stepfather assisted Child when Child expressed an interest in playing the clarinet. **Id.** at 15, 68. Stepfather also played video games with Child and "roughhoused" with Child. **Id.** at 14-15. Stepfather, Mother, Child, and A.S. would go to the movies, go out to eat, play miniature golf, and bowl together when Stepfather was in Western Pennsylvania. **Id.** at 60. All of these actions are those typically undertaken by a parent – not a mentor or friend as suggested by Mother.

We also find persuasive a decision of the Court of Appeals of North Carolina. In **Duffey v. Duffey**, 438 S.E.2d 445 (N.C. App. 1994), the court found that a service member's provision of benefits to a child, by listing the child as a dependent, was strong evidence that the service member stood *in loco parentis* to the child. **See id.** at 447. In this case, Stepfather listed Child as his dependent and, therefore, Child received medical and dental benefits as a part of Stepfather's military benefits package. N.T., 8/29/17, at 44. Mother was aware that Child received these benefits and did not object to Stepfather listing Child as a dependent. We agree with the Court of Appeals of North Carolina that the provision of such benefits is a strong indication that Stepfather stands *in loco parentis* to Child.

The fact that Stepfather did not live with Child and Mother in a family setting due to his military service does not automatically defeat Stepfather's claim that he stands *in loco parentis* to Child. **Cf. C.G. v. J.H.**, 172 A.3d 43, 47 (Pa. Super. 2017), *appeal granted on other grounds*, 179 A.3d 440 (Pa. 2018) (citation omitted) (although parties lived together in a family setting the one party did not stand *in loco parentis*). Stepfather's absence from the family home is merely one factor in determining whether he stands *in loco parentis* to Child. Mother cites no case law, nor are we aware of any, holding that this factor alone is dispositive. Instead, it is only an important factor that courts must consider when determining if a third-party is standing *in loco parentis* to a child.

Today, many biological parents and those who discharge parental duties do not live with a child and a natural parent in a family setting. Remarriage following the death of, or divorce from, a natural parent and traveling employment arrangements have become common occurrences in modern society. Because of these shifts, whether a child and a third-party reside as a family unit has become less conclusive when determining if an individual stands *in loco parentis*.

The other factors that we have discussed above are relevant when determining if an individual stands *in loco parentis* to a child. In these respects, Stepfather served in the place of Child's deceased biological father. Although she argues otherwise, Mother accepted the benefits of Stepfather's childrearing efforts together with any risks associated with that arrangement, *i.e.*, the ability of Stepfather to seek custody of Child. She did so, among other ways, by allowing Stepfather to extend his military benefits to Child and by allowing a parental bond to form. Mother is attempting to use Stepfather's noble military service against him. Although living with a child is often an important element of the *in loco parentis* inquiry, it is not a dispositive factor by itself. That is particularly the case under these circumstances, where the party asserting *in loco parentis* status did not live with the child because of his service in our nation's armed forces. The evidence educed at the hearing showed that Father both assumed parental status and discharged parental

duties. Hence, we hold that the trial court properly found that Stepfather had standing to pursue this custody action.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/29/2018