J-S01003-22 & J-S01004-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| AARON DAVID BABNER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KELSEY ELYSE BAER | : | No. 405 MDA 2021 |

Appeal from the Order Entered February 23, 2021
In the Court of Common Pleas of Cumberland County Civil Division at
No(s): 2018-09510

| | | |
|---|---|---|
| AARON DAVID BABNER | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KELSEY ELYSE BAER | : | |
| | : | |
| APPEAL OF: CATHI GEORGE | : | No. 406 MDA 2021 |

Appeal from the Order Entered February 23, 2021
In the Court of Common Pleas of Cumberland County Civil Division at
No(s): 2018-09510

BEFORE:   BOWES, J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY BOWES, J.:                **FILED MARCH 09, 2022**

In these consolidated appeals, Aaron David Babner ("Father") and Cathi

George ("Paternal Grandmother") challenge the February 23, 2021 child

custody order that denied Father's petition to modify custody of his son, I.B.,

_____

[*] Retired Senior Judge assigned to the Superior Court.

and maintained the status quo by awarding shared legal and physical custody to I.B.'s maternal grandmother, Jennifer Baer ("Maternal Grandmother"). We affirm.[1]

I.B. was born in September 2018, to Father and Kelsey Elyse Baer ("Mother"), who were not in a relationship and never resided together. On September 18, 2018, Father filed a custody complaint seeking shared legal and physical custody of I.B. Mother, who was raising I.B. while simultaneously struggling with an active drug addiction, filed preliminary objections disputing Father's paternity. The trial court ultimately dismissed the preliminary objections based upon the anticipated results of paternity testing that was ordered as part of Mother's separate child support action against Father, which confirmed Father's paternity.

Contemporaneously, in December 2018, Cumberland County Children and Youth Services ("CYS") obtained legal and physical custody of I.B. via an emergency custody authorization and placed him in kinship care with Maternal Grandmother. On December 17, 2018, the juvenile court adjudicated I.B. dependent due to (1) Mother's mental health problems and drug addiction and (2) Father's anger issues and incarceration for violating orders protecting

_____

[1] We consolidated the appeals for ease of disposition because they involve the same order, flow from identical facts, and the trial court addressed both sets of arguments in one opinion.

Mother under the Protection from Abuse Act ("PFA").[2]  Trial Court Opinion, 9/2/21, at 3.  Following the adjudication hearing, the trial court maintained CYS's physical and legal custody and I.B.'s placement with Maternal Grandmother.  *Id*. at 4.

On April 9, 2019, the trial court stayed the custody litigation pending resolution of the dependency proceedings.  Order, 4/9/19, at 1.  The juvenile court conducted periodic permanency review hearings, and on August 23, 2019, it ultimately determined that I.B. was no longer a dependent child and awarded shared legal and physical custody to Father and Maternal Grandmother.

Thereafter, on August 30, 2019, the trial court conducted a hearing in the custody matter to address Father's still-pending petition for custody. Mother did not seek any form of custody because of her ongoing drug abuse.

_____

[2]  Since the certified record transmitted to this Court does not include the dependency record, as discussed in more detail, *infra*, we are uncertain of the precise reason for I.B.'s dependency.  The trial court, who was the same judge that presided over the dependency proceedings, maintains that I.B. was adjudicated dependent as to Father, whose paternity had not yet been confirmed, because of his "anger issues" and his incarceration for several violations of the PFA order Mother had obtained against him.  Trial Court Opinion, 9/2/21, at 3.  Even without the dependency record, there is support in the certified record for this finding.  Father's criminal-history disclosure that accompanied his initial custody complaint indicates that Mother obtained a PFA order against him on May 30, 2018.  Similarly, the updated disclosure that Father attached to the petition to modify custody indicates that he was sentenced on November 23, 2018, to one to twenty-three months of incarceration for terroristic threats.  Father also indicated that he was sentenced without further penalty on January 15, 2019, for a violation of 23 Pa.C.S. § 6114, relating to the violation of a protection order.

Paternal Grandmother and Maternal Grandmother each participated in the custody hearing, having been granted standing in March and April 2019, respectively.

Following the evidentiary hearing, wherein the trial court incorporated the dependency record by agreement, the trial court entered an order revoking all prior custody orders and setting forth a new arrangement effective September 1, 2019. ***See generally*** Order of Court, 9/5/2019. Specifically, the trial court provided Father and Maternal Grandmother with shared legal custody of I.B. ***Id***. at ¶ 1. It also awarded both Father and Maternal Grandmother equally shared physical custody of I.B., rotating their custodial periods weekly. ***Id***. at ¶ 2. The trial court permitted Mother to visit I.B. in the presence of Maternal Grandmother during Maternal Grandmother's custodial periods. ***Id***. at ¶ 4. Paternal Grandmother, on the other hand, was permitted to visit I.B. during Father's custodial periods. ***Id***. at ¶ 5. The trial court ordered Father to continue participating in anger management counseling until successfully discharged. ***Id***. at ¶ 9.

On November 20, 2020, Father filed the petition for modification that is at issue in this appeal.[3] He sought sole legal custody and primary physical

_____

[3] On December 22, 2020, Father filed a counter-affidavit objecting to Maternal Grandmother's proposed relocation. However, the parties ultimately settled that dispute upon confirming that the move did not constitute a relocation insofar as the new residence was approximately four miles from the prior home and within the same school district. N.T., 2/10/21, at 6-7. As the
*(Footnote Continued Next Page)*

custody of I.B., averring that it was in I.B.'s best interest to return Maternal Grandmother to a grandparent role, with alternating weekends, shared holidays, and an allotment of vacation time. **See** Petition to Modify Custody Order, 11/20/20, at ¶¶ 11-15. Notably, Paternal Grandmother did not file a petition or counterclaim with the trial court seeking a specific form of physical custody.

The trial court conducted a hearing on Father's petition on February 10, 2021. Mother, who was in a year-long rehabilitation facility program, did not appear at the hearing. **See** N.T., 2/10/21, at 60-61. Father, Paternal Grandmother, and Maternal Grandmother all appeared with counsel. Father testified in support of his petition. He also presented the testimony of a family friend who discussed Father's demeanor and interactions with I.B., as well as a friend who testified about issues relating to the manner Maternal Grandmother administered I.B.'s asthma medications. Maternal Grandmother and Paternal Grandmother each testified on her own behalf.

At the conclusion of the hearing, the trial court placed its findings on the record with respect to the factors set forth in 23 Pa.C.S. § 5328(a), discussed *infra*. **See** N.T., 2/10/21, at 106. The court determined, by clear and convincing evidence, that it served I.B.'s best interests to maintain the status quo. **Id**. The court modified one paragraph of the August 30, 2019 order

_____

change of residence did not impair Father's ability to exercise custodial rights, the litigation proceeded only on Father's petition to modify custody. **Id**. at 7.

relating to childcare providers that is not relevant to this appeal, and specified that the August 30, 2019 order otherwise was to remain in full force and effect. *See* Order, 2/23/21, at 1.

Father and Paternal Grandmother each filed a notice of appeal, along with a concurrent concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court entered a single Pa.R.A.P. 1925(a) opinion addressing both sets of argument.

Father presents the following questions for our review:

1. Whether the trial court erred or abused its discretion in apply [*sic*] the law delineated in the Custody Act (23 Pa.C.S. § 5328 and § 5327(b)) and Pennsylvania jurisprudence governing third[-]party standing in granting shared physical and legal custody to Father and Maternal Grandmother.

2. Whether the trial court erred or abused its discretion when it considered evidence outside of the February 10, 2021 hearing including its decision to incorporate "the relevant portion of the Juvenile Court file" at the close of the hearing after having precluded Father from presenting any evidence from the same time period and is a violation of Due Process rights.

Father's brief at 5.[4]

Paternal Grandmother raises two issues:

1.    Whether the trial court erred in failing to consider the factors contained in 23 Pa.C.S. § 5328(c) after determining that [Paternal Grandmother] had standing pursuant to 23 Pa.C.S. § 5325.

2.    Whether the trial court erred when it did not grant [Paternal Grandmother] any partial physical custody of I.B., as it was not in I.B.'s best interests.

_____

[4] Neither Mother nor Paternal Grandmother filed a brief in Father's appeal.

Paternal Grandmother's brief at 4 (unnecessary capitalization omitted). Although we do not cite it in this memorandum, we note that Father filed a brief supporting Paternal Grandmother's positions. In contrast, Maternal Grandmother submitted a letter noting her agreement with the reasoning that the trial outlined in disposing of these claims in the Rule 1925(a) opinion.

We review a custody order for an abuse of discretion. *R.L. v. M.A.*, 209 A.3d 391, 395 (Pa.Super. 2019). We will not find an abuse of discretion merely because we would have reached a different conclusion than the trial court. *Id*. Rather, we will find an abuse of discretion only if the trial court overrode or misapplied the law in reaching its conclusion, or the record shows the trial court's judgment was manifestly unreasonable or the product of partiality, prejudice, bias, or ill will. *Id*.

Our scope of review is broad. *Id*. Since this Court does not make independent factual determinations, we must accept findings of the trial court that are supported by competent evidence of record. *S.C.B. v. J.S.B.*, 218 A.3d 905, 913 (Pa.Super. 2019). Importantly, we defer to the trial court on matters of credibility and weight of the evidence, as the trial court viewed and assessed witnesses firsthand. *Id*. However, we are not bound by the trial court's deductions or inferences. *Id*.

In a child custody case, "the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa.Super. 2014). Once a custody arrangement is established by order, a court may modify it at any time upon

a party's petition if the modification serves the best interests of the child. *See* 23 Pa.C.S. § 5338. To that end, the Child Custody Act sets forth sixteen factors that a court must consider before making any custody determination, including a modification of a custody order. *See E.B. v. D.B.*, 209 A.3d 451, 460 (Pa.Super. 2019). Therefore, "[i]t is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *Id*. (citation omitted). The statutorily required factors are as follows:

> (a) Factors.--In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> > (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
> >
> > (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
> >
> > (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
> >
> > (3) The parental duties performed by each party on behalf of the child.
> >
> > (4) The need for stability and continuity in the child's education, family life and community life.
> >
> > (5) The availability of extended family.
> >
> > (6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

At the outset we address Paternal Grandmother's appeal docketed at 406 MDA 2021. She argues that the trial court erred in two ways: first, by not including her in its analysis of the custody factors; and second, by not awarding her any form of custody. Paternal Grandmother's brief at 11-23.

- 9 -

There is no merit to either of Paternal Grandmother's complaints. As we recently stated, "The standing provision only addresses **who** may file a petition." ***Graves v. Graves***, ___ A.3d ___, 2021 WL 4839479, at *4 (Pa.Super. October 18, 2021) (emphasis in original). Even if a person obtains standing to participate in a pending custody matter, he or she must still file a counterclaim for custody in order to be included in the best-interest analysis or awarded custody. ***See id***. (holding, trial court erred by awarding custody to parent who did not file counterclaim for custody).

Our review of the certified record reveals no petition or counterclaim filed by Paternal Grandmother, only the January 2019 petition to intervene averring that she had a direct interest in I.B.'s custody matter. ***See generally*** Motion to Intervene, 1/29/19. In contrast to Paternal Grandmother's limited entreaty, prior to the initial award of custody, Maternal Grandmother not only sought to intervene, but she specifically requested custody. ***See***, ***e.g.***, Petition for Emergency Relief, 3/29/19, at ¶ 28. Moreover, unlike Maternal Grandmother, Paternal Grandmother had no existing legal custody implicated by Father's petition to modify. Without a specific request from Paternal Grandmother, the parties lacked advance formal notice of the claim and could not defend against it.[5] Therefore, under the facts of this case, we discern no

_____

[5] Even during her testimony, Paternal Grandmother was not always clear about what type of custody she was seeking. She indicated she would like to maintain her relationship with I.B., see him overnight every other weekend, *(Footnote Continued Next Page)*

- 10 -

error or abuse of discretion in the trial court's decision to omit Paternal Grandmother from its specific consideration of the best interest factors or in failing to award her custody in response to Father's modification petition. Accordingly, no relief is due.

Having addressed Paternal Grandmother's appeal, we turn to Father's arguments. Father's first issue relates to Maternal Grandmother's status as a third-party. The Child Custody Act provides that "[i]n any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence." 23 Pa.C.S. § 5327(b). Clear and convincing evidence is evidence "that is so clear, direct, weighty, and convincing so as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *M.J.S. v. B.B.*, 172 A.3d 651, 660 (Pa.Super. 2017).

Obtaining standing, even through *in loco parentis* status, does not place the third party on equal footing as a parent. *Id*. Stated another way, the presumption in favor of the parent still applies. *Id*. Once the trial court hears all evidence relevant to a child's best interest, it must "decide whether the

_____

and take him on vacation. N.T., 2/10/21, at 69-70. On cross-examination, she indicated she would like the ability to take him to the doctor if Father was not available, but it is unclear whether she sought legal custody in any manner. *Id*. at 70-71. Later, she testified that she wanted her own custodial period carved equally from the custodial time of Father and Maternal Grandmother. *Id*. at 75.

- 11 -

evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side." *V.B. v. J.E.B.*, 55 A.3d 1193, 1199 (Pa.Super. 2012). The "non-parent bears the burden of production and the burden of persuasion and . . . the non-parent's burden is heavy." *Ellerbee v. Hooks*, 416 A.2d 512, 514 (Pa. 1980). "[W]here circumstances do not clearly indicate the appropriateness of awarding custody to a non-parent, we believe the less intrusive and hence the proper course is to award custody to the parent or parents." *Id*.

Father concedes that the trial court noted this presumption; however, he contends that the court's analysis is devoid of any consideration of Maternal Grandmother's burden to overcome it. *See* Father's brief at 34. In Father's view, the trial court's award of continued shared custody interferes with the parent-child relationship between Father and I.B. and should be reversed, particularly given the trial court's praise of Father's efforts and parenting throughout its analysis of the § 5328 factors. *Id*. at 35.

Father is correct that the trial court praised his parenting and improved ability to co-parent with Maternal Grandmother. N.T., 2/10/21, at 102, 105. In fact, the trial court congratulated Father in making "great strides" in addressing his anger issues and noted he was "much more mature" and that his anger was no longer "an overriding concern." *Id*. at 105-06. Indeed, in its analysis of the statutory factors that directly address the practical aspects of parenting I.B. and Father's ability to meet his son's needs, the trial court

found that Father "is completely able to care for [I.B.] on his own." *Id*. at 103-104.

Nevertheless, in its analysis of the first factor, cooperation with the other party, the trial court stated its reservation that Father might not continue to be accommodating if he exercised primary custody. In explaining its apprehension with Father's proprietary attitude toward I.B., the court noted that it had "real concerns if [F]ather is in sole control he will not encourage the same level of contact with [M]aternal [G]randmother and the rest of [M]other's family." *Id*. at 102. Later, the court expanded upon the same theme in its discussion of factor eight, attempts of a party to turn a child against the other party. The court remarked that while it did not question Father's love for I.B., it had

> an impression, a vague impression, but concrete enough that during the dependency proceedings, as well as these proceedings, [F]ather seems to have a feeling of proprietary interest in [I.B.] The fact that he is the father means he should have the child to the exclusion of [M]aternal [G]randmother despite the bond with [M]aternal [G]randmother and the family.

*Id*. at 104. Hence, the court reiterated its concern that Father's possessive interest in I.B. may jeopardize the child's relationship with Maternal Grandmother if Father was given complete discretion. *Id*.

It is apparent from the foregoing discussion that the trial court's concerns are founded upon an inference, which is not binding on this Court. *S.C.B.*, *supra*, at 913. In fact, if the court's trepidation about Father's continued cooperation was the sole reason for its decision, that justification

would be unpersuasive given the court's finding that Father previously cooperated with Maternal Grandmother and has improved his co-parenting since the last custody hearing.

However, contrary to Father's protestations, the trial court's unease regarding Father's potential alienation of Maternal Grandmother was not the foundation of the custody decision. In analyzing factor sixteen, other relevant factors, the court explained that "the overarching reason" for its decision to uphold the status quo of equally shared physical custody was the importance of maintaining the child's bond with Maternal Grandmother, who

> has been the only mother this child has known. She was the primary caretaker for almost the entirety of his first year of life. As [F]ather made progress, he was able to work into a competent and loving caretaker of [I.B.] There is an extremely strong bond between [Maternal Grandmother and I.B.] and an obvious bond between [I.B.] and the extended family of [M]other. To sever or even to diminish that bond would be detrimental to the welfare of [I.B.].

N.T., 2/10/21, at 106.

Father argues the trial court's finding that Maternal Grandmother is the only mother that I.B. has known, the bedrock upon which the trial court made its best interest determination, is without support in the record. Father's brief at 35. He points out that I.B. does, in fact, know his mother, as Maternal Grandmother testified that she supervised the child's visits with Mother. *Id*. Moreover, Father emphasizes that Maternal Grandmother did not have legal custody of I.B., and she was merely a foster parent to I.B. during a time when

Mother was contesting Father's paternity, which hindered his ability to parent. *Id*. at 35-36, 42 n.1.

Father's assertion puts too fine of a point on the trial court's statement. Obviously, Maternal Grandmother is not the only mother I.B. has ever known in its absolute literal sense. However, the certified record demonstrates that she has fulfilled that parental role over the lifetime of the two-and-one-half-year-old child. I.B. spent nine of the first twelve months of his life with Maternal Grandmother acting as his primary caretaker. N.T., 2/10/21, at 46. She continued in that role until shortly before his second birthday, when Father obtained shared custody of I.B. in August 2019. *Id*. Since then, Maternal Grandmother satisfied the child's needs one-half of the time. *Id*. Thus, while Maternal Grandmother may not be I.B.'s legal mother, the certified record sustains the trial court's statement that she consistently has fulfilled that role. *Accord M.J.S. v. B.B.*, 172 A.3d 651, 656 (Pa.Super. 2017) ("[B]y satisfying [the child's] daily physical, emotional, and financial needs for his entire life, [the child's grandmother] assumed an enduring role that was much more significant than a frequent caretaker."). Hence, we do not disturb the trial court's finding concerning Maternal Grandmother's parental role during the child's life.

It is no doubt frustrating for Father to share custody of the child he loves with someone else, particularly a third party that he did not choose. From Father's perspective, he did all that he could to obtain custody of I.B. from the

outset. Even if Father is correct that Mother's dispute over his paternity hindered his ability to parent I.B., this still does not account for the fact that during that time, I.B. was bonding with Maternal Grandmother. In this situation, the concern is not about giving "credit" to a grandparent for the time a child lived with them. *Snarski v. Krincek*, 538 A.2d 1348 (Pa.Super. 1988). Instead, it is about recognizing, from the child's perspective, the importance of the grandparent in the child's life. *See id*; *see also Graves*, *supra* at *8 ("The paramount focus is the best interest of the child involved, not the respective rights of the contesting parties."). The trial court does not have to find the parent unfit before awarding all or some custody to a third party. *Id*. ("Factors having a significant effect on the child's well-being can justify a custody finding in favor of a third party, even if the evidence does not show that the biological parent is unfit."). Thus, the trial court did not abuse its discretion in relying upon I.B.'s relationship with Maternal Grandmother, and the concomitant stability that the relationship provides the child, as a ground to find that it served I.B.'s best interests for Maternal Grandmother and Father to continue to share physical custody.

Furthermore, many of Father's arguments ignore that the trial court determined in August 2019, that Maternal Grandmother established by clear and convincing evidence that shared custody was in I.B.'s best interest. While the presumption in favor of a parent still applies in a custody modification analysis, and Father did not have to prove there was a change of

circumstances to support the modification of the August 2019 custody order, "best interest cannot be considered in a vacuum and w[h]ere the circumstances [are] unchanged from those that resulted in the initial custody arrangement, it must be presumed that what was in the child's best interest continues.'" *R.M.G., Jr., v. F.M.G.*, 986 A.2d 1234, 1239 (Pa.Super. 2009) (quoting *Hutchinson v. Hutchinson*, 549 A.2d 999, 1001 (Pa.Super. 1988)). This precept recognizes that children thrive with stability and certainty:

> It is axiomatic that the potential harm that may result from the disruption of established patterns of care and emotional bonds underscores the need for continuity, stability, and finality imparted to custody arrangements. A modification of custody is not warranted merely because one parent is unhappy with the existing arrangement. Thus, we repeatedly have emphasized that a party requesting modification must prove that the alteration of an existing custody arrangement is in the child's best interest.

*Jackson v. Beck*, 858 A.2d 1250, 1252 (Pa.Super. 2004).

The bottom line is that Maternal Grandmother continues to serve an essential role in I.B.'s life. The trial court recognized this and applied the tenet in favor of maintaining the status quo. *See* Trial Court Opinion, 9/2/21, at 7. Moreover, the certified record supports the court's application of this principle. The considerations that tip the scale in favor Maternal Grandmother are I.B.'s need for stability and continuity and the strong relationship between I.B. and Maternal Grandmother and other members of Mother's family. A time may come in I.B.'s future when circumstances change, or I.B.'s maturity and developmental level require a re-evaluation of the situation. However, given I.B.'s young age and the success of the co-parenting relationship to date, we

discern no abuse of discretion in the trial court's decision to continue the status quo for I.B. Hence, Father's first argument fails.

Father's second claim asserts that the trial court violated Father's due process rights by considering the history of I.B.'s dependency case without notice to Father and without allowing Father the opportunity to present evidence contesting that history. *See* Father's brief at 41-43. Father argues that he has no way of knowing which portions of the juvenile court proceedings the trial court relied upon, and therefore could not respond to it. *Id*. at 43. He points to case law indicating that it is error for a trial court to consider information from outside the record or that was obtained upon the court's own search. *Id*. at 45-46.

We have explained that "[f]ormal notice and an opportunity to be heard are fundamental components of due process when a person may be deprived in a legal proceeding of a liberty interest, such as physical freedom, or a parent's custody of her child." *J.M. v. K.W.*, 164 A.3d 1260, 1268 (Pa.Super. 2017) (*en banc*) (citation omitted). Thus, "[i]t is well settled that procedural due process requires, at its core, adequate notice, opportunity to be heard, and the chance to defend oneself before a fair and impartial tribunal having jurisdiction over the case." *S.T. v. R.W.*, 192 A.3d 1155, 1161 (Pa.Super. 2018) (citation and quotation marks omitted). However, we note that "[d]ue process is flexible and calls for such procedural protections as the situation demands." *Id*.

In addressing Father's argument, the trial court points out that Father did not object or otherwise raise this issue in the proceedings before the trial court. *See* Trial Court Opinion, 9/2/21, at 7. For the following reasons, the issue is waived because Father failed to assert it in the trial court.

The record confirms that Father agreed to the scope of the proceedings at the outset and did not present any objection when the trial court indicated the relevance of the dependency history. Before the testimony began, the trial court announced the scope of the hearing. N.T., 2/10/21, at 6 ("Let's hear from dad. And I don't want to hear anything before August 2019, the date of my last order, nothing."). Shortly thereafter, it again reiterated the scope, instructing Father's counsel to cover the custody factors from October 2019 forward. *Id*. at 7. Father's counsel replied, "Yes, [Y]our [H]onor." *Id*. At the end of the hearing, immediately before it made its findings, the trial court stated,

> I'm going to go over the custody factors and I'll start by indicating that I'm intimately familiar with this case. I've been involved with this case as the dependency judge and as the custody judge at the last hearing. And I believe we have made a large part of the dependency file part of this file.

*Id*. at 101. Father did not object, and the trial court then proceeded to put its findings on the record.

Father claims if he had "been aware or had any notice of the trial court's intention to include some heretofore unidentified portion of the child's dependency records into the custody case, he would have been able to provide

- 19 -

his own exhibits, witnesses, and cross-examine parties and witnesses." Father's brief at 45. The record belies Father's assertion. Father was aware of the trial court's statement regarding the court's intent to consider aspects of the dependency case but neglected to object. *Id*. at 101. As Father failed to preserve his argument before the trial court, it is waived. **See** Pa.R.A.P. 302(a) (stating that "issues not raised in the lower court are waived and cannot be raised for the first time on appeal").

Furthermore, even if the issue was not waived, Father would not be entitled to relief under the facts of this case. Although Father claims he does not know what the trial court considered from the dependency proceedings, the trial court referenced the dependency record that Father previously agreed to incorporate into the evidence when litigating his original custody petition. **See** Trial Court Opinion, 9/2/21, at 6. As such, Father's argument that he did not know what the trial court considered before the court's Rule 1925(a) opinion is specious.

Moreover, regarding the second portion of due process, Father had an opportunity to be heard at the hearing but did not request to present prior history or argue the trial court should not have considered prior history. As discussed *supra*, a modification petition cannot be considered in isolation. Although clearly separate matters arising under different statutes and involving different dockets and records, the custody case and dependency case implicated by this appeal have overlapped to such an extent that it would

be impossible to describe the procedural history of one proceeding without reference to the other.[6]   Father may disagree with the reasons why the juvenile court adjudicated I.B. dependent or declined to return I.B., but there is no dispute as to the fact of the adjudication or the long-term placement with Maternal Grandmother.  In addition, the trial court fully credited Father with resolving his anger issues that existed during the dependency.

As to Father's argument that the court deprived him of the ability to present evidence about his prior involvement with I.B., "including evidence of . . . Mother's acts of denying his paternity and intentionally inhibiting his and . . . [P]aternal [G]randmother's custodial rights," Father's brief at 41, Father fails to explain how such evidence would have been relevant to his petition for modification of custody.  Given that the trial court's primary reason for preserving the status quo for I.B. is the bond and stability he experiences with Maternal Grandmother, as discussed *supra*, revisiting the history of the

_____

[6]  Although we do not find that it constitutes reversible error in this case, it would have been prudent for the trial court to formally incorporate the dependency record into the record of the custody hearing, or otherwise formally incorporate the dependency record into the custody record on the docket.  Indeed, its failure to do so no doubt contributed to the omission of the dependency record from the certified record on appeal – an omission that neither the trial court nor the parties attempted to rectify.  **See** Pa.R.A.P. 1921, Comment ("All involved in the appellate process have a duty to take steps necessary to assure that the appellate court has a complete record on appeal, so that the appellate court has the materials necessary to review the issues raised on appeal.  Ultimate responsibility for a complete record rests with the party raising an issue that requires appellate court access to record materials.").

dependency case in the custody matter would not impact the fact that I.B. has spent most of his life with Maternal Grandmother. Based on the foregoing, Father would be due no relief on due process grounds even if he had not waived his argument by failing to preserve it.

As Father failed to establish that the trial court either committed legal error or abused its discretion in maintaining shared legal and physical custody, we do not disturb its determination. Accordingly, we affirm the February 23, 2021 custody order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/09/2022