J-A02034-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| L.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.J.D. | : | |
| | : | |
| Appellant | : | No. 823 WDA 2020 |

Appeal from the Order Entered July 27, 2020
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD-09-008294-016

| L.D. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| K.J.D. | : | |
| | : | |
| Appellant | : | No. 824 WDA 2020 |

Appeal from the Order Entered July 27, 2020
In the Court of Common Pleas of Allegheny County Family Court at
No(s): FD-09-008294-016

BEFORE:  BOWES, J., NICHOLS, J., and McLAUGHLIN, J.

MEMORANDUM BY McLAUGHLIN, J.:                **FILED: JUNE 15, 2021**

K.J.D. ("Father") appeals from the order of the trial court denying his Third Petition for Special Relief-Custody and granting the petition of L.D. ("Mother") for counsel fees. He claims that the trial court erred when it denied his petitions for special relief without a hearing, and when it granted Mother counsel fees. We affirm the trial court order denying the petitions for special relief, and affirm the finding that Mother is entitled to counsel fees; however,

we must vacate the specific award of counsel fees and remand to the trial court for a determination of reasonable fees based on the record.

> [Father] and [Mother] are the biological parents of two minor children, M.D. [(born April 2004)] and S.D. [(born February 2008)]. Over the years, Father and Mother have engaged in extensive litigation including divorce, support, and custody. Pursuant to three orders of court dated September 16, 2014, October 19, 2017, and March 15, 2018, Mother exercised primary physical custody and father exercises partial physical custody of S.D. every Wednesday at 6:15 p.m. to Friday at 6:15 p.m., and then alternating weekends.[1]
>
> > [1] The current custody litigation and pleadings discussed herein only relate to Father's custody of S.D.
>
> On June 16, 2020, Father submitted an emergency petition for special relief-custody. In that petition, Father alleged that due to the ongoing COVID-19 pandemic, he had agreed to postpone his partial physical custody of S.D. for an unspecified period of time, but that around May 17, 2020, he sensed the child becoming distant from him. Father alleged that on May 17, 2020, he reached out to Mother through the Our Family Wizard ("OFW") application to inform her that he wanted to resume his partial physical custody schedule. Father further alleged that on May 20, 2020, he appeared at Mother's residence to exercise his partial physical custody of S.D., but that no one responded when he rang the door bell.
>
> Father explained that he submitted his petition as an emergency due to his fear that continued absence from his child's life would destroy his relationship with her. As a result, Father requested make-up time be awarded. Father alleged that Mother stated she "could care less" if he re-established custody and that her behavior in withholding the same constituted obdurate, vexatious, repetitive, and/or bad faith behavior and requested $750 in counsel fees/sanctions pursuant to 42 Pa.C.S.A. § 2503(7) and/or 23 Pa.C.S.A. § 5339. Father did not provide any exhibits to support his allegations of Mother's conduct.
>
> On June 17, 2020, Mother submitted a response to emergency petition for special relief-custody in which she admitted that Father had voluntarily suspended his partial physical custody of S.D. and that he had informed her on May 17, 2020, that he

desired to resume the same. However, Mother alleged that she had informed Father that S.D. had school and virtual soccer practice every weekday and that due to his lack of working internet, he could not resume his custody until the weekend. Father responded to Mother's message on May 20, 2020, that he understood. As proof of their exchange, Mother attached a print-out of the parties OFW messages as Exhibit A to her pleading. Mother vehemently denied that Father appeared at her residence on May 20, 2020, or that she stated she "could care less" about his re-establishing custody; rather, that her statement was about further court action. Further, Mother argued that Father's petition did not constitute an "emergency" and that he had failed to establish her conduct constituted obdurate or vexatious behavior.

In a new matter, Mother alleged that she routinely has the child ready to go when it is Father's time to exercise custody but that he often fails to appear to exercise the same. Specifically, Mother alleged that on May 26, 2020, Father sent a message on OFW that he would seek court help if the regular custody schedule did not resume. Mother alleged that on the following day, a regular custody day for Father, she had the child ready to go but that Father failed to appear. After Mother sent Father an OFW message about his failure to appear, Father's response was "why would tonight have been different from last week when she refused to come out" and then "[y]ou do not have my permission to have [S.D.]," which she attached as Exhibits E and F. Mother alleged that on May 28, 2020, a Thursday, which was not a regular custody exchange day, Father appeared to pick-up S.D. Mother alleged that she sent the child out to Father, along with M.D., that the three spoke at length, but that S.D. did not go with Father.

Thereafter, on Wednesday, June 3rd, a regular custody day for Father, Mother alleged that he failed to appear and sent no OFW messages regarding the same. Although the custody period beginning on June 3rd was a regular custody weekend for Father, Mother alleged that he failed to appear and sent no OFW messages regarding the same. On June 7th, Mother alleged that Father marked vacation time with S.D. on OFW to begin June 10th and continue through June 17th. Again, on June 10th, a regular custody day for Father, Father failed to appear. Mother explained that Father made no attempt to exercise custody and sent no OFW messages regarding custody after May 28, 2020, yet filed an "emergency" motion on June 16, 2020, alleging she was withholding custody, despite providing proof to Father's counsel that Father was failing to appear to exercise custody. Mother

alleged it was Father who had engaged in conduct that was obdurate, vexatious, repetitive, and in bad faith, which warranted her request for $2,500 in counsel fees.

Pursuant to the court's COVID-19 emergency operation procedures, the motion and response were decided on the pleadings with no oral argument. By two orders of court dated June 17, 2020, [the trial c]ourt denied Father's petition, but ordered that he confirm in writing 24 hours in advance his intent to exercise his custody, and denied Mother's request for fees.

Eight days later, Father submitted a second emergency petition for special relief-custody. Upon a challenge from Mother's counsel that the same did not constitute an emergency, the [trial c]ourt agreed and informed both counsel that the motion would [be] treated as a non-emergency motion. In his second petition, Father alleged that he attempted to exercise his custody of S.D. on June 18th, but that Mother and S.D. came to his car and stated that S.D. would not be going with him, and that then Mother went back into the house and left S.D. outside, thereby failing to complete the custody exchange. Father alleged that he was forced to contact the Upper St. Clair Police Department for assistance, but that after the officers spoke with Mother she still refused to exchange custody.

Father alleged that he tried again on the following day, Friday, June 19th, and then all weekend to obtain custody, but that he was met with hostility from Mother and her refusal to allow S.D. to go with him. As was the case with his first petition, Father alleged that Mother's behavior in withholding custody constituted obdurate, vexatious, repetitive, and/or bad faith behavior and requested $1,500 in counsel fees/sanctions pursuant to 42 Pa.C.S.A. § 2503(7) and/or 23 Pa.C.S.A. § 5339. Father also requested a contempt hearing be scheduled. Father did not provide any exhibits to support his allegations of Mother's conduct.

On July 2, 2020, Mother submitted a response to [Father's] second emergency petition for special relief-custody. In her response, Mother clarified that Father had failed to comply with [the] court's June 17th order of court as it related to providing 24-hour notice, as Father's custody schedule begins on Wednesdays, not Thursdays, so he had technically forfeited his custody period; nonetheless, Mother had the child available on June 18th.

- 4 -

Furthermore, Mother denied going to Father's car with the children. Instead, Mother alleged that she sent the children outside and that they informed Father that S.D. would not be going with him. Mother admitted that she did not force S.D. to get into Father's car, but that at the same time Father also did not force S.D. to get into his car. As it related to the police involvement, Mother attached a copy of the police report and pointed out that it made no mention of her, but that it indicated that the officer spoke with the child and that the child refused to go with Father. Mother specifically denied Father's allegation that he attempted to obtain custody on Friday June 19th or Saturday, June 20th. Mother attached OFW messages that evidenced the fact that she reached out to Father regarding his custody on Father's Day after he failed to provide 24-hour notice of the same. On Father's Day, Mother averred that she had S.D. ready to go, but that when Father appeared S.D. informed him that she was not going with him.

Mother averred that she made no attempts to thwart Father's custody. To the contrary, Mother averred it is she who regularly reaches out to Father to inquire about his custody, despite the court order requiring him to provide notice of the same, and that she has the child ready and available for the exchanges. Mother argued that Father simply wants her to do the "dirty work" of forcing S.D. into []his car, when he is in just as much of a position to force S.D. into his car. Mother alleged that S.D. has offered to spend smaller increments of time with Father or go to dinner with Father, but that Father flatly refuses. Mother argued that Father acknowledged that S.D. is refusing to go with him and had failed to allege how Mother has refused to comply with the court orders, so it was he who had engaged in conduct that was obdurate, vexatious, repetitive, and in bad faith with his repeated motions, which warranted her request for $2,500 in counsel fees.

By two orders of court dated July 2, 2020, this court denied Father's petition except for the paragraph regarding strict compliance with the September 16, 2014 and June 17, 2020 orders of court and denied Mother's request for fees.

Thereafter, on July 21, 2020, Father submitted his third petition for special relief-custody in which he alleged that he had informed Mother on July 7th of his intent to exercise his custody of S.D. on July 8th, but that when he arrived at Mother's residence S.D. came out of the house and informed him that she would not be going with him. Father stated that he explained to S.D. that Mother was

the party responsible for completing the custody exchange and that there would be consequences for her failure to do so. Father alleged that Mother had inappropriately abdicated her authority to S.D. Father also alleged that Mother, as the plaintiff, had the legal burden of petitioning for a modification of the custody orders if she did not believe them to be in line with S.D.'s preference.

As was the case with his first and second petitions, Father alleged that Mother's behavior in failing to force S.D. to go with him and/or Mother's failure to petition for a modification of custody constituted obdurate, vexatious, repetitive, and/or bad faith behavior and requested $2,250 in counsel fees/sanctions pursuant to 42 Pa.C.S.A. § 2503(7) and/or 23 Pa.C.S.A. § 5339. Father, again, requested a contempt hearing be scheduled. Father did not provide any exhibits to support his allegations of Mother's conduct.

On July 27, 2020, Mother submitted her response to [Father's] third petition for special relief-custody, in which she admitted to the facts surrounding the July 8th encounter, but again argued that she had nothing to interfere with Father's custody, as she had the child ready and available for the exchange. Mother attached OFW messages from July 7th and July 8th to show her intent to comply with the court orders and her continued encouragement that S.D. spend time with Father. Mother, again, cited issues with the fact that Father places all of the responsibility for the exchange on her, when Father is just as capable of forcing the child to get into his car. Mother also argued that it was Father who was the actual plaintiff in the action, despite the case caption, but that regardless they are both in a position to modify the custody orders, though she has no desire to do the same.

In a new matter, Mother alleged that Father had made no further attempts to obtain custody after July 8th, thereby failing to comply with the June 17, 2020 order of court and forfeiting his custody time with S.D. Mother attached an OFW exchange in which Father requested to have a lunch or dinner date with the children, to which Mother agreed, but for which Father never followed up. Mother argued, again, that it was Father who had engaged in conduct that was obdurate, vexatious, repetitive, and in bad faith, which warranted her request for $5,000 in counsel fees.

By two orders of court dated July 27, 2020, [the trial court] denied Father's petition entirely and granted Mother's request for $5,000 in fees. It is from these two orders of court that Father appealed.

Trial Ct. Op., 8/31/20, at 2-10 (some capitalization omitted).

Father raises six questions on appeal:

1. The Trial Court erred and/or abused its discretion in denying Father's Third Petition for Special Relief-Custody thereby denying Father the right to a Hearing to compel Mother to comply with the Custody Orders dated September 16, 2014, June 17, 2020 and July 2, 2020.

2. The Trial Court erred and/or abused its discretion in denying Father's Third Petition for Special Relief-Custody thereby denying Father the right to a Hearing on Mother's contempt for her failure to comply with the Custody Orders dated September 16, 2014, June 17, 2020 and July 2, 2020.

3. The Trial Court erred and/or abused its discretion and denied Father due process of law by denying him a hearing and access to the Court to seek to address his inability to have custody of his daughter pursuant to the Orders of Court dated September 16, 2014, June 17, 2020 and July 2, 2020.

4. The Trial Court erred and/or abused its discretion by denying Father a Hearing on his Petition to compel his custody pursuant to the Orders of Court dated September 16, 2014, June 17, 2020, and July 2, 2020, thereby, de facto, modifying custody, *sua sponte*, without a Petition for Modification pending and without consideration of the Custody Factors set forth in §5328 of the Divorce Code (23 Pa. C.S.A. §5328).

5. The Trial Court erred and/or abused its discretion in sanctioning Father $5,000.00 as attorney fees without conducting a hearing as required by §5339 of the Divorce Code (23 Pa.C.S.A. § 5339) or §2503(7) of the Judiciary Code (42 Pa.C.S.A. § 2503(7)[)].

6. The Trial Court erred and/or abused its discretion and denied Father due process of law by awarding Mother with $5,000.00 in attorney fees without presentation of evidence as to Father's alleged conduct, as well as without evidence relating to Mother's actual attorney fees, the hourly rate, the number of hours, and any other matters which would be necessary to prove the reasonableness of the claim and allow Father cross-examination as to same.

Father's Br. at viii.

In his first three issues, which Father has combined in his appellate brief,[1] he contends that the trial court abused its discretion because it did not conduct hearings on his third petition for special relief-custody. **See id.** at 1, 8. Father claims that "he was denied due process of the law when the trial court denied his request for a hearing to compel [Mother's] compliance with the final order of court for custody and for a hearing on contempt arising from his inability to receive custody of his daughter." **Id.** at 1. Father alleges that the court's COVID-19 judicial emergency policy, wherein it denied his petition based on the averments in the pleadings, did not afford him a meaningful opportunity to advocate for himself. **See id.** at 4. He argues that he could not adequately respond to Mother's points raised and was denied the opportunity to call or cross-examine witnesses. Father further claims that in denying the petition based on the pleadings, the court ignored the Pennsylvania Rules of Evidence. Finally, Father contends that the court ultimately abused its discretion because without conducting a hearing, it could not make an informed judgment. **See id.** at 7.

Mother responds that Father never requested a hearing on his petition to compel, but rather only asked the court to enter an order compelling her to comply with the court's custody orders and to hold a contempt hearing. **See**

---

[1] **But see** Pa.R.A.P. 2119(a) (requiring argument to be divided into as many parts as there are questions to be argued). We do not quash as the violation of Rule 2119(a) has not hindered our ability to evaluate Father's issues.

Mother's Br. at 6. Mother claims that Father knew about the court's COVID-19 procedures when he filed his petition, and therefore should have requested a hearing in accordance with those procedures when he filed his petition. *See id.* at 8.

Mother alleges that with respect to Father's request for contempt, Father was not denied access to the court, rather he was denied a hearing because his allegations, even if true, did not demonstrate that Mother was not complying, and failed to meet the standard for contempt. *See id.* at 9. Mother explains that the due process requirements for contempt are that a party receive notice and an opportunity to be heard. She argues that Father clearly had notice because he brought the action, and he had an opportunity to be heard and lay out all the facts supporting his contempt allegation in his pleadings. *See id.* at 12-13. Finally, she states that Father could have filed a response to Mother's new matter, or the evidence included in her answer, but did not choose to do so. *See id.* at 15.

Preliminarily, we set forth a brief history regarding the trial court's COVID-19 modified procedures. On March 19, 2020, our Supreme Court issued an order establishing a statewide judicial emergency in response to the COVID-19 global pandemic. *See In re: General Statewide Judicial Emergency*, 228 A.3d 1281 (Pa. 2020). The order authorized president judges to declare judicial emergencies and consider "appropriate measures to be taken to safeguard the health and safety of court personnel, court users,

and members of the public." ***Id.*** In its subsequent orders, the Supreme Court expanded the scope and extended the length of the judicial emergency.

On May 28, 2020, the President Judge of the Fifth Judicial District issued an order providing that, with respect to custody matters, "[a]ny matter may be presented to the Court by Motion, without a hearing, for entry of an Order pursuant to the assigned judge's procedures posted on the Fifth Judicial District website." ***In re: Amended Fifth Judicial Dist. Emergency Operations Plan***, 23 WM 2020 (Pa. filed May 28, 2020). The courtroom procedures for the trial judge in the instant matter currently state:[2]

**Attorney Motions—General Information**

Judge Satler is accepting attorney motions at any time. Motions will be on the pleadings only, there will be no oral argument. All scheduled attorney motions dates are cancelled. Attorneys should submit their motions, with the required Motions Admission Form (available on the Fifth Judicial District website), to Law Clerk Rachel Cipolat at rcipolat@alleghenycourts.us. If your email was successfully received, then you will receive an email response of "Received." All deadlines and rules, including the requirement to meet and confer, must be followed.

**Attorney Motions—Non-emergency**

The Court will not review or act on a motion until a period of seven (7) days has passed unless the parties agree otherwise. Nonemergency motions submitted weekdays after 5 p.m., on

---

[2] Glaringly, Father omitted a copy of the trial court's operating procedures from his appeal complaining that the procedure was inadequate. The trial court has since updated its procedure; however, because the COVID-19 pandemic is ongoing, and because the current posted procedure comports with the parties' description of that which was in place when Father's petition was filed, we have used the current version.

weekends, or holidays will be considered received on the next business day.

Any response must be filed by noon on the seventh day. Any further responses are limited to New Matters only, unless leave of Court is granted. The Court will review the pleading(s) and will enter an order(s) and email copies to counsel. If possible, the Court will file the pleading(s) and order(s) with the Department of Court Records.

**Attorney Motions—Emergency**

The Court has discretion to challenge the nature of any motion designated as an "emergency." Emergency motions submitted weekdays before noon are eligible for same-day decision, with responses being due by 3 p.m. that day. Emergency motions submitted after noon are not eligible for same-day decision and will not be ruled on prior to the end of the next business day, with responses being due by noon on the next business day.

Courtroom Procedures for The Honorable Jennifer Satler, 1/21/21, at 1-2 (available at: https://www.alleghenycourts.us/judges/default.aspx?show=0GkhKhMEunQ=).

The first part of Father's argument concerns whether the court abused its discretion by denying his petition for special relief with respect to compelling Mother to deliver custody of S.D.

Instantly, we observe that Father only requested a hearing with respect to his petition for contempt. He did not request a hearing on his petition to compel, but rather requested that the court enter an order compelling Mother to comply with the prior custody orders. *See* Third Petition for Special Relief-Custody, 7/27/20, at 5 (requesting that the court "enter an Order of Court compelling Mother to immediately comply with the [custody orders] and

provide Father with his custodial time as set forth therein. Father also prays this Honorable Court schedule a Contempt Hearing in order to find Mother in contempt of Court for her willful and intentional conduct in denying Father his periods of partial custody."). Therefore, having not raised this issue before the trial court, he cannot raise it for the first time on appeal. **See** Pa.R.A.P. 302(a).

Furthermore, Rule 1915.13, which covers special relief in custody matters authorizes the court to "on application or its own motion grant appropriate interim or special relief." Pa.R.C.P. 1915.13.

> Rule 1915.13 does not establish any specific procedure for the trial court to impose temporary special relief and, critically, it certainly does not require that the trial court schedule a hearing or listen to argument before special relief is awarded. Indeed, pursuant to Rule 1915.13, the court may grant relief *sua sponte*. **See** Pa.R.C.P. 1915.13 ("At any time after commencement of the action, the court may on application or its own motion grant appropriate interim of special relief[, including] the award of temporary legal or physical custody[.]").

***M.J.S. v. B.B.***, 172 A.3d 651, 655 (Pa.Super. 2017).

Finally, we observe that due process requires the court to afford Father notice and an opportunity to be heard. Here, Father clearly had notice because he was the party who filed this third petition for special relief. Father also was aware of the court's procedure for deciding special relief motions on the pleadings. The modified procedures were publicly posted, and this was his third petition filed during the COVID-19 modified procedures—the first two similarly having been decided without a hearing, and without objection—and

- 12 -

yet Father neither requested a hearing, nor sought leave to file a response to Mother's Answer and New Matter.

Moreover, Father had an opportunity to be heard – he filed his petition for special relief and was free to make any allegations he wished. The fact that his allegations were insufficient to show that there was an issue of material fact requiring a hearing is not tantamount to a deprivation of due process. Therefore, we find that Father was afforded adequate notice and an opportunity to be heard, and his due process claim is meritless.

In the second part of his argument, Father contends that the court abused its discretion when it denied his petition for contempt without conducting a contempt hearing. He claims that his "Third Petition for Special Relief provided the Trial Court and [Mother] 'notice' of [Father's] belief and position that [Mother] was part and parcel of his failure to receive custody." Father's Br. at 8. Therefore, he contends the court abused its discretion by denying the petition for contempt without knowledge of the relevant factors from which it could "make an informed judgment." *Id.*

Mother contends that Father was not denied due process because there is no requirement that Father automatically receive a hearing upon making an allegation of contempt. *See* Mother's Br. at 12. She posits that due process only requires that he be afforded notice and an opportunity to be heard. Mother asserts that Father had notice because he was the party who brought the action, and that he would have had an opportunity to be heard beyond the initial opportunity to set forth his argument in his petition if a hearing on

the issue had been necessary. ***See id.*** at 13. The fact that Father "failed to state sufficient facts or to provide any evidence," Mother argues, "is not due to the denial of a hearing." ***Id.*** Rather, Father could have done that in his petition, "particularly given the fact that he was well aware that under the [trial c]ourt's current operating procedures, motions were being decided on the pleadings." ***Id.***

We review a trial court's decision concerning contempt related to custody for an abuse of discretion.

> This court's review of a civil contempt order is limited to a determination of whether the trial court abused its discretion. If a trial court, in reaching its conclusion, overrides or misapplies the law or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record, then discretion is abused.
>
> In order to establish that a party is in civil contempt, there must be proof by a preponderance of the evidence that the contemnor had notice of the specific order that he or she is alleged to have disobeyed, that the act that constituted the contemnor's violation was volitional, and that the contemnor acted with wrongful intent.

***Thompson v. Thompson***, 187 A.3d 259, 263 (Pa.Super. 2018), *aff'd*, 223 A.3d 1272 (Pa. 2020) (citation omitted).

> Ordinarily, due process requires a five-step procedure prior to a finding of civil contempt. However, when the contempt proceedings are predicated on a violation of a court order that followed a full hearing, due process requires no more than notice of the violations alleged and an opportunity for explanation and defense.

***Diamond v. Diamond***, 792 A.2d 597, 601 (Pa.Super.  2002) (citation and quotation marks omitted); ***see also Harcar v. Harcar***, 982 A.2d 1230, 1235 (Pa.Super. 2009) ("Fulfillment of all five factors is not mandated, however. [T]he essential due process requirements for a finding of civil contempt are notice and an opportunity to be heard") (citations and internal quotation marks omitted).

Presently, the trial court explained its decision to deny Father's petition for contempt as follows:

> Here, although Father alleged in his Third Petition for Special Relief-Custody that Mother was not complying with the pertinent court orders, he failed to set forth facts to support a claim that Mother was willfully not complying with the same. Instead both Father's and Mother's recitation of the facts align, which is that Father showed up at Mother's house, Mother and S.D. came outside, Father and S.D. then took a walk around the block, S.D. informed Father that she would not be going with him, and then Father left. Yet, Father concludes S.D.'s decision is the result of Mother's abdication of her legal authority and that Mother is in contempt of the court orders.

Trial Ct. Op. at 12-13.

> Father's Third Petition for Special Relief—Custody is based on the flawed premise that Mother is solely responsible for the custody exchange.
>
> Both Mother and Father stated that S.D. told Father that she does not want to go with him. Both Mother and Father have informed S.D. that there is a court order that states she is to go with him and that there could be consequences if she does not; still, S.D. refuses to go with Father. According to Mother, S.D. has explained to Father her reasons for not wanting to go with him, and that S.D. has offered different ways to spend time with Father, but that he refuses her offers.

Father's blanket statements that Mother is not complying with the court orders are an insufficient basis upon which to grant a contempt hearing. Father did not allege that Mother was not at home when he showed up for the custody exchanges. Father did not allege that Mother told him that S.D. cannot go with him. Father did not provide any text messages or OFW messages in which Mother refused him custody. The facts alleged simply do not support a claim that Mother willfully failed to comply with the pertinent court orders. To order a contempt hearing be scheduled based on the facts alleged would subvert both the meaning of the statute and the administration of justice.

*Id.* at 14-15.

Upon review, we agree with the trial court that Father's claim that Mother violated the custody order is not supported by the allegations set forth in his third petition for special relief. **See Thompson**, 187 A.3d at 263. Furthermore, the record demonstrates that Father had both notice of the contempt petition, and an opportunity to be heard. **See Harcar**, 982 A.2d at 1235. Accordingly, we conclude that the trial court did not abuse its discretion in denying Father's petition without conducting a contempt hearing.

In his fourth issue, Father contends that the trial court *de facto* and *sua sponte* modified the parties' custody agreement when it denied his request of a hearing on his petition to compel. He claims that because of the denial, he "does not have and will not have an[y] further custody of his daughter pursuant to the September 16, 2014 Order of Court." Father's Br. at 9. Therefore, he asserts the court modified the custody arrangement such that he will not have custody of S.D. Father argues that the court was not permitted to modify the custody agreement because there was no petition to modify,

- 16 -

and the court "modified custody based solely upon the alleged 'reasons' of S.D., which are not part of the record." *Id.* at 12.

Mother reiterates that Father never requested a hearing with respect to his petition to compel, therefore the trial court did not err in not conducting a hearing. *See* Mother's Br. at 30. She then notes that the trial court "did not take away any future custody of Father," but rather pointed out that by failing to give notice and failing to appear, Father is forfeiting his custody. *Id.* at 31. Finally, Mother points out that while Father asserts that Mother should be compelled to make S.D. go with Father, and the trial court not compelling her to do so is a *de facto* modification of custody, he "is infuriated and incredulous at the suggestion that he compel the child to go," and places the onus solely on Mother. *Id.* at 35.

The trial court responded to Father's allegation of error as follows:

> On the issue of *de facto* modification, it is also unclear to this [c]ourt how its denial of his requested contempt hearing related to the July 8th custody exchange effectuates a modification of his custody when he failed to give notice and appear to exercise his custody on the subsequent two custodial periods, and, as previously discussed, failed to give notice and appear for at least [eight] of the proceeding custodial periods. Somehow, it is not a *de facto* modification of custody when Father routinely fails to give notice and appear for his custodial periods, but it is when this [c]ourt denies him a contempt hearing after he failed to support his claim that Mother was in willful noncompliance by denying him custody. If the court orders are being modified, then they are being modified as a result of Father's voluntary forfeiture of his custody.

Trial Ct. Op. at 17-18.

Upon review, we agree with the trial court. In his third petition for special relief, Father only requested a contempt hearing, he did not request a hearing for his petition to compel. The trial court's denial of a contempt hearing did not in any way modify the parties' custody agreement. Rather, the court concluded that Father's allegations were insufficient to support a finding of contempt. Father enjoys the same right to custody of S.D. as he has had throughout the instant matter.

Finally, in his fifth and sixth issues, Father challenges the trial court's award of counsel fees against him. He claims that the court erred when it awarded such fees to Mother without a hearing to determine whether he had acted arbitrarily, vexatiously, or in bad faith. **See** Father's Br. at 16.

Mother alleges that the trial court's award of counsel fees was within its discretion and was supported by the record. She claims that the record supports the trial court's conclusion that Father acted vexatiously and obdurately, by filing three petitions for special relief, filed in just over one-month time, which were all denied because they contained baseless allegations or dishonesty. **See** Mother's Br. at 42, 44.

Our standard of review for an award of counsel fees is well settled: "we will not disturb a trial court's determination absent an abuse of discretion. A trial court has abused its discretion if it failed to follow proper legal procedures or misapplied the law." **Dong Yuan Chen v. Saidi**, 100 A.3d 587, 591 (Pa.Super. 2014) (citations omitted).

The trial court imposed fees based on section 5339 of the Child Custody Act.  *See* 23 Pa.C.S.A. § 5339 ("a court may award reasonable interim or final counsel fees, costs and expenses to a party if the court finds that the conduct of another party was obdurate, vexatious, repetitive or in bad faith"). "Section 5339 provides the authority for the award of counsel fees and costs in custody matters, not only in cases of contempt, but also in cases where a party's conduct is obdurate, vexatious, repetitive or in bad faith." *Dong Yuan Chen*, 100 A.3d at 591 (citation and internal quotation marks omitted).

"Generally speaking, 'obdurate' conduct may be defined in this context as 'stubbornly persistent in wrongdoing.'" *In re Estate of Burger*, 852 A.2d 385, 391 (Pa.Super. 2004), *aff'd*, 898 A.2d 547 (Pa. 2006) (citation omitted).[3] "A suit is vexatious, such as would support an award of counsel fees, if it is brought without legal or factual grounds and if the action served the sole purpose of causing annoyance." *Dong Yuan Chen*, 100 A.3d at 592 (citation and quotation marks omitted). "Finally, an opponent can be charged with filing a lawsuit in 'bad faith' if he filed the suit for purposes of fraud, dishonesty, or corruption." *In re Burger*, 852 A.2d at 391 (citation omitted). "The relentless

---

[3] *In re Burger* analyzes 42 Pa.C.S.A. § 2503, related to the general rights of parties to receive counsel fees; however, we cite it here because the language of 23 Pa.C.S.A. § 5339 pertaining to award of counsel fees with respect to child custody matters is nearly identical to that of section 2503, with the addition of the word "repetitive" in the list of offensive conduct in section 5339. *See In re Burger*, 852 A.2d at 391; 23 Pa.C.S.A. § 5339; 42 Pa.C.S.A. § 2503.

pursuit of a claim which plainly lacks legal merit warrants an award of counsel fees." ***Miller v. Nelson***, 768 A.2d 858, 862 (Pa.Super. 2001).

Statutes awarding counsel fees do not aim to punish those who initiate unsuccessful legal actions or seek to develop new legal theories. ***See Dong Yuan Chen***, 100 A.3d at 592. "Rather, the statute focuses attention on the conduct of the party from whom counsel fees are sought and on the relative merits of that party's claims." ***Id.*** (citation omitted).

Here, the trial court made a finding, which is supported by the record, that Father's conduct in filing and pursuing three petitions for special relief within six weeks was obdurate, vexatious, and in bad faith because all three petitions contained baseless allegations or outright dishonesty. ***See*** Trial Ct. Op. at 19. When the court ruled on Father's initial emergency petition, the court found that he forfeited custody on May 20, and then lied to the court alleging that Mother had withheld custody on that date. The court denied Father's first petition, and required him to give 24-hour notice of his intent to exercise custody.

Eight days later, Father submitted a second petition alleging that Mother refused to exchange custody. Again, the petition was dishonest in that Father failed to mention that he did not give 24-hour notice in advance, and that he attempted to exercise custody on a non-exchange day. Father's second petition also attempted to mischaracterize an interaction with the Upper St. Clair Police Department, claiming that the police conversed with Mother who

refused to exchange custody. A review of the police reports reveals no interaction between the police and Mother.

Finally, Father filed his third petition alleging that Mother was willfully non-compliant with the court's order during a custody exchange on July 8. However, the parties do not contest that on July 8, Father attempted to exercise custody over S.D., who, after taking a walk around the block with Father, told him that she would not be going with him. Father still argued that Mother was in willful noncompliance.

Upon review, we agree that Father's repeated pleadings were obdurate and vexatious because Father stubbornly persisted in wrongdoing with the sole purpose of causing annoyance. *See In re Burger*, 852 A.2d at 391. Furthermore, we agree with the trial court that it could adequately make this finding based on the record, and it did not need to conduct a hearing. *See id.* ("Although disposition of claims under either section generally requires an evidentiary hearing, no hearing is necessary where the facts are undisputed") (citation omitted).

Finally, Father argues that the trial court's determination that the amount of fees was reasonable is not supported by the record because there is no evidence of Mother's attorney's hourly rate or the number of hours. *See* Father's Br. at 17-18. Mother responds that the award of $5,000 in fees is not an unreasonable amount, and the court had the authority to award such fees without specific evidence of the attorney's hourly rate or number of hours. *See* Mother's Br. at 45. Finally, Mother asserts that Father does not have an

absolute right to a hearing on the issue of counsel fees, and that he had an opportunity to develop the record by attaching evidence to his petitions. ***See id.*** at 47.

We review a trial court's award of attorney's fees for an abuse of discretion. ***See Dong Yuan Chen***, 100 A.3d at 591. Section 5339 of Title 23 provides that "a court may award **reasonable** interim or final counsel fees, costs and expenses to a party if the court finds that the conduct of another party was obdurate, vexatious, repetitive or in bad faith." 23 Pa.C.S.A. § 5339 (emphasis added).

In the instant case, although the trial court decision's to award attorney's fees is thoroughly explained in its opinion, the trial court provides little basis for this Court to review the reasonableness of the actual amount of fees awarded. Indeed, the record does not contain evidence sufficient to support a finding of reasonableness. Accordingly, we vacate the order of attorney's fees and remand to the trial court for it to receive evidence supporting a determination of a reasonable amount of counsel fees.

Order affirmed in part and vacated in part. Order vacated with respect to amount of attorney's fees. Jurisdiction relinquished.

Judge Nichols concurs in the result.

Judge Bowes files a dissenting memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/15/2021