J-S25032-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| JOYCE TARR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| FABIAN YOUNG | : | |
| | : | |
| Appellant | : | No. 172 WDA 2022 |

Appeal from the Order Entered January 26, 2022
In the Court of Common Pleas of Crawford County
Civil Division at No(s): 2021-120-S

BEFORE: BENDER, P.J.E., DUBOW, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: OCTOBER 21, 2022**

Appellant, Fabian Young ("Father"), appeals *pro se* from the order entered in the Crawford County Court of Common Pleas, granting primary physical custody of, and sole decision-making authority concerning, minor children, L.Y., A.Y., and J.Y. ("Children") to Appellee, Joyce Tarr ("J.T."). We affirm.

The trial court set forth the relevant facts and procedural history of this case as follows:

> This [c]ourt held a *de novo* custody trial on January 24, 2022 at Father's request. The parties are [J.T.] and [Father], who was recently confirmed as the father of the three Children through paternity testing.

> The subjects of this custody action (hereafter "the Children") are [L.Y.], born July…2017 (currently age 4), [A.Y.], born December…2018 (currently age 3), and [J.Y], born February…2020 (turning 2 in February).

On March 24, 2021, the biological mother of the Children, [B.K. ("Mother")], died of a drug overdose. The Children resided with their mother since birth at [J.T.'s] residence…in Guys Mills, Pennsylvania. Presently residing at [J.T.'s] residence are: [J.T], [J.T.'s grandson R.K.], and the Children.

The biological father is [Father]. Father resides in Edinboro, PA, with his girlfriend [J.G., J.G.'s five year old son [M.], [Father's] fourteen year old daughter [N.], and, on weekends, [Father's] thirteen year old son. Last week, Father started a job as a health care worker at Cross Home Care. Father reports he receives income from side jobs and two businesses: a cleaning service for Airbnb and another online business. Father's girlfriend works at Walmart in Edinboro, Pennsylvania.

This case has a long procedural and factual history both before and after [J.T.] filed for custody in April of 2021. The circumstances surrounding [J.T.] filing for custody of the Children were as follows: when [Mother] died in March of 2021, [Maternal Grandmother], made an emergency telephone call to [J.T.] and asked her to care for the Children. ([Mother] and the Children had been living with [J.T.] and the Children knew her as a caregiver).[1] For the transfer, [Maternal Grandmother] arranged to meet [J.T.] in a church parking lot. When [J.T.] arrived and was waiting for car seats, Father also arrived. The situation became hostile and [Maternal Grandmother] called the police. When the officers arrived, they permitted the Children to go with their father. Father put the children in his car and left without car seats.

Having no way to see the Children and no way to contact Father, [J.T.] filed for custody and appeared in Custody

_____

[1] Mother was raised by her stepfather, J.O., and step-grandmother, J.T. Mother resided with J.T. frequently throughout her life, including after she gave birth to Children. Children primarily resided in J.T.'s home with Mother since they were born. J.T. is the step-great-grandmother to Children, and Children considered J.T. as a grandparent. Although Children primarily resided with J.T., on the evening before Mother's death, Children had visited with Maternal Grandmother so they were not in J.T.'s care when Mother died.

Motions Court on April 14, 2021. The Honorable Mark D. Stevens awarded legal and physical custody of the Children to [J.T.] Then on April 19, 2021, [J.T.] filed a Motion to Preserve the Status Quo. On April 22, 2021, the Honorable John F. Spataro ordered that the Children be immediately returned to [J.T.] pending mediation. The Judge ordered all law enforcement authorities to enforce the order. Erie County Judge John J. Trucilla ordered Erie County law enforcement and Sheriff's department to enforce Judge Spataro's order. The case proceeded to mediation on June 14, 2021. Father did not appear. Judge Spataro entered an order following the recommendation of the mediator that [J.T.] have sole legal and physical custody and reaffirming that all law enforcement were requested to enforce the order.

On June 25, 2021, Father filed a Request for *De Novo* Hearing stating he was in Florida and did not receive notice of the mediation. Upon receipt of the request, Judge Spataro ordered the case to be returned to mediation. [J.T.] filed an Emergency Petition for Contempt on July 21, 2021. The motion was withdrawn as Father had already been found in contempt of Erie County Judge Trucilla's Order by the Honorable Connelly Marucci on July 23, 2021. On July 29, 2021, four months after Father left with the Children, Father relinquished the Children to the Erie County Sheriff's Office and [J.T.] received the Children.

Father then filed a Petition to Modify Judge Spataro's June 14, 2021 custody order seeking sole legal and physical custody of the Children and, once again, the case was scheduled for mediation. This time Father appeared. Judge Spataro adopted the recommendation of the mediator and entered an order dated August 20, 2021 giving [J.T.] primary physical custody. Father was given as many supervised visits as he can afford at The Center For Family Services. [J.T.] and Father were given shared legal custody with [J.T.] having sole decision-making authority.

On August 26, 2021, Father's mother [M.B.], who is the paternal grandmother to the Children [("Paternal Grandmother")], filed a Petition to Intervene. (When paternity was established at our *de novo* hearing on January 24, 2022, the subject of this opinion, the [c]ourt granted

- 3 -

[Paternal Grandmother's] Petition to Intervene.)

In September, Father filed a *pro se* Petition for Contempt, a Motion for Emergency Custody Order and a Request for a *De Novo* Custody Hearing. Father also filed a Motion for Guardian *Ad Litem* [("GAL")] and a Motion for an Expedited Hearing. The Motion for Emergency Custody was denied by Judge Spataro on September 20, 2021. The remainder of the Motions were heard by the Honorable Senior Judge William R. Cunningham on September 27, 2021. Judge Cunningham granted the request for a [GAL], and appointed Mary Adelman, Esquire, as the GAL. Judge Cunningham denied or otherwise dispensed the remainder of Father's *pro se* motions, ordering [Father] to complete paternity testing to establish standing for both Father and [Paternal Grandmother].

(Opinion and Order, filed 1/26/22, at 1-2).

Following the September 27, 2021 hearing, the court entered an opinion and order on October 6, 2021, expressly rejecting Father's claim that J.T. lacked standing to bring the custody action. The court made clear that J.T. has been *in loco parentis* to Children their entire lives. (**See** Opinion and Order, filed 10/6/21, at 7-9).

The court held a *de novo* custody trial on January 24, 2022. On January 26, 2022, the court entered a custody order adopting the same arrangement set forth in the August 20, 2021 order, namely, awarding J.T. primary physical custody of Children and Father supervised visitation at The Center for Family Services; and for J.T. and Father to share legal custody, with J.T. to have sole decision-making authority. Father timely filed a notice of appeal on February

7, 2022.[2]

Father raises four issues for our review:

> Did the [trial] court commit an abuse of discretion erring when it determined that it had jurisdiction to commence [J.T.'s] child custody action?
>
> Did the [trial] court commit an abuse of discretion erring when it found that [J.T.] had standing to initiate her custody action?
>
> Did the [trial] court commit an abuse of discretion erring when it entered an order of default judgment that relinquished [Father]'s parental rights to [J.T.]?
>
> Did the [trial] court commit an abuse of discretion erring when it allowed the child custody proceedings to egregiously proceed past the allotted time established by law?

(Father's Brief at iv).[3]

In custody cases, the relevant scope and standard of review are as follows:

> [T]he appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no

_____

[2] Father did not file a concise statement of errors complained of on appeal contemporaneously with his notice of appeal per Pa.R.A.P. 1925(a)(2)(i). Following a directive from this Court to file his concise statement by March 14, 2022, Father complied and filed his concise statement on March 9, 2022. We decline to quash Father's appeal or deem his issues waived under these circumstances. *See In re K.T.E.L.*, 983 A.2d 745, 747 n.1 (Pa.Super. 2009) (stating that appellant's failure to file concise statement contemporaneously with notice of appeal in children's fast track case did not result in waiver on appeal where appellant subsequently filed statement, and there was no allegation of prejudice based on late filing).

[3] We note that Father improperly refers to himself as "appellee" and to J.T. as "appellant" throughout his brief which makes it difficult to read in some places.

competent evidence to support it…. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination…. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*R.M.G., Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa.Super. 2009) (quoting *Bovard v. Baker*, 775 A.2d 835, 838 (Pa.Super. 2001)). "On issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *R.M.G., Jr., supra*.

The parties cannot dictate the amount of weight the trial court places on the evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.

*Id.* (quoting *S.M. v. J.M.*, 811 A.2d 621, 623 (Pa.Super. 2002)). Additionally, when making an award of custody, the court must evaluate the custody factors delineated in Section 5328. *See* 23 Pa.C.S.A. § 5328(a) (factors to consider when awarding custody).

In his first issue, Father argues the trial court lacked jurisdiction over the custody matter. Father asserts that Erie County was the proper venue in which to file the custody complaint because Children had resided there for 12 months preceding the filing of the complaint. Father claims that J.T.

improperly filed the custody complaint in Crawford County, before she had "physical possession of the children[.]" (Father's Brief at 8). Father insists J.T. knowingly and intentionally included misstatements and omissions of material facts in the complaint,[4] which prevented the court from performing its "neutral and detached function, thereby voiding the complaint." (*Id.* at 9). We disagree.

Initially, we observe:

> A court's decision to exercise or decline jurisdiction is subject to an abuse of discretion standard of review and will not be disturbed absent an abuse of that discretion. Under Pennsylvania law, an abuse of discretion occurs when the court has overridden or misapplied the law, when its judgment is manifestly unreasonable, or when there is insufficient evidence of record to support the court's findings. An abuse of discretion requires clear and convincing evidence that the trial court misapplied the law or failed to follow proper legal procedures.

*Lucas v. Lucas*, 882 A.2d 523, 527 (Pa.Super. 2005). This Court has explained:

> Frequently, the terms jurisdiction and venue are used interchangeably although in fact they represent distinctly different concepts. Subject matter jurisdiction refers to the competency of a given court to determine controversies of a particular class or kind to which the case presented for its consideration belongs. Venue is the place in which a particular action is to be brought and determined, and is a matter for the convenience of the litigants. Jurisdiction denotes the power of the court whereas venue considers the practicalities to determine the appropriate forum.

---

[4] Father does not elaborate in his brief on J.T.'s purported "misstatements and omissions of material facts."

***J.K. v. W.L.K.***, 102 A.3d 511, 513 (Pa.Super. 2014) (internal citation omitted).

Pennsylvania Rule of Civil Procedure 1915.2 governs the venue of custody matters. The Rule provides, in relevant part:

**Rule 1915.2. Venue**

(a) An action may be brought in any county

(1)(i) which is the home county of the child at the commencement of the proceeding, or

(ii) which had been the child's home county within six months before commencement of the proceeding and the child is absent from the county but a parent or person acting as parent continues to live in the county[.]

Pa.R.C.P. 1915.2(a)(1).

Instantly, J.T. presented testimony/evidence throughout the history of this case that Children resided in J.T.'s home with Mother in Crawford County prior to Mother's death. J.T. acknowledged that on occasion Mother would take Children to visit Maternal Grandmother or to visit Father and Father's family in Erie County, as Mother and Father had an "on again, off again" relationship. J.T. clarified that Mother never left with Children for more than a few weeks at a time. Although Father claimed that Children predominantly resided in Erie County, the court credited J.T.'s testimony. (***See*** Opinion and Order, 1/26/22, at 3) (stating Children have resided at J.T.'s residence since birth). ***See also R.M.G., Jr.*** (explaining that we defer to credibility findings by trial court). Additionally, the court already decided by opinion and order

entered October 6, 2021 that J.T. stood *in loco parentis* to Children. Thus, the record shows that at the time J.T. filed the custody complaint on April 8, 2021, Crawford County had been Children's home county within the preceding six months. Additionally, even though Children were absent from Crawford County at the time J.T. filed the custody complaint because Father had taken them with him following Mother's death, J.T. (who was acting in the role of *in loco parentis*) was still residing in Crawford County. Therefore, venue was proper in Crawford County per Rule 1915.2(a)(1)(ii), and Father's first issue merits no relief. **See** Pa.R.C.P. 1915.2(a)(1)(ii).

In his second issue, Father argues the court erroneously concluded that J.T. had *in loco parentis* standing to commence the custody action. Father emphasizes that he did not consent to J.T.'s actions evinced by Father's challenge to Children being taken from him. Father submits that Children did not reside with J.T. for 12 consecutive months prior to the filing of the action. Father concludes J.T. lacked standing to pursue custody, and this Court must grant relief. We disagree.

Preliminarily, we reiterate that the court held a hearing to address the parties' standing on September 27, 2021, and entered an opinion and order on October 6, 2021, confirming J.T.'s standing as *in loco parentis* to pursue custody. Although that order was not final, it was immediately appealable under the collateral order doctrine. **See K.W. v. S.L.**, 157 A.3d 498 (Pa.Super. 2017) (holding that father's appeal from order granting appellees'

- 9 -

*in loco parentis* standing was immediately appealable as collateral order). Father did not file an interlocutory appeal from that decision as a collateral order. In its Rule 1925(a) opinion, the trial court suggested that Father waived the standing issue, presumably because Father could have challenged standing following the October 6, 2021 order. Recently, however, this Court stated: "We can find no rule of law, either statutory or common law, which states that a collateral order **must** be appealed within 30 days of its entrance or an appeal based upon the substance of the collateral order is forever precluded." ***Adams v. Toll Brothers, Inc.*** No. 1451-1460 EDA 2021 (Pa.Super. July 28, 2022), 2022 WL 2980865 at *6 (unpublished memorandum)[5] (emphasis in original). ***See also*** Pa.R.A.P. 313(a) (stating appeal **may** be taken as of right from collateral order). Consequently, we disagree that Father's challenge to standing is waived in this appeal and we will review the merits of Father's second issue.

Our review of this issue implicates the following legal principles:

> "Threshold issues of standing are questions of law; thus, our standard of review is *de novo* and our scope of review is plenary." ***Rellick–Smith v. Rellick***, 147 A.3d 897, 901 (Pa.Super. 2016) (quoting ***Johnson v. American Standard***, 607 Pa. 492, 8 A.3d 318, 326 (2010)).
>
> Generally, the Child Custody Act does not permit third parties to seek custody of a child contrary to the wishes of that child's parents. The Act provides several exceptions to this rule, which apply primarily to grandparents and great-

---

[5] ***See*** Pa.R.A.P. 126(b) (stating we may rely on unpublished decisions from this Court filed after May 1, 2019 for persuasive value).

- 10 -

grandparents. *See* 23 Pa.C.S.A. § 5324(3); 23 Pa.C.S.A. § 5325. In fact, unless a person seeking custody is a parent, grandparent, or great-grandparent of the child, the Act allows for standing only if that person is "*in loco parentis*." 23 Pa.C.S.A. § 5324(2).[6]

"The term *in loco parentis* literally means 'in the place of a parent.'" *Peters v. Costello*, 586 Pa. 102, 891 A.2d 705, 710 (2005) (citing Black's Law Dictionary, 791 (7th Ed. 1991)). A person stands *in loco parentis* with respect to a child when he or she "assum[es] the obligations incident to the parental relationship without going through the formality of a legal adoption. The status of *in loco parentis* embodies two ideas; first, the assumption of a parental status, and, second, the discharge of parental duties." *Id.* (quoting *T.B. v. L.R.M.*, 567 Pa. 222, 786 A.2d 913, 916-17 (2001)). Critical to our discussion here, "*in loco parentis* status cannot be achieved without the consent and knowledge of, and in disregard of[,] the wishes of a parent." *E.W. v. T.S.*, 916 A.2d 1197, 1205 (Pa.[Super.] 2007) (citing *T.B.*, *supra*).

---

[6] Under Section 5324, the following individuals may file an action for any form of physical custody or legal custody:

(1) A parent of the child.
(2) A person who stands in *loco parentis* to the child.
(3) A grandparent of the child who is not *in loco parentis* to the child:
    (i) whose relationship with the child began either with the consent of the parents of the child or under a court order;
    (ii) who assumes or is willing to assume responsibility for the child; and
    (iii) when one of the following conditions is met:
                    *    *    *
            (C) the child has, for a period of at least 12 consecutive months, resides with the grandparents, excluding brief temporary absences of the child from the home and is removed from the home by the parents in which case the action must be filed within six months after the removal of the child from the home.

23 Pa.C.S.A. § 5324.

***K.W., supra*** at 504-05.

Instantly, in the trial court's October 6, 2021 opinion and order following the September 27, 2021 hearing on standing, the court explained that J.T. has always been "a grandmother figure" for Children. (Opinion and Order, 10/6/21, at 5). The court noted that Children resided almost exclusively with J.T. since their birth, and any periods of time where Mother would take Children to stay at other locations were temporary. Specifically, the court noted that J.T. provided parental support for Children by feeding Children, bathing them, providing transportation for Children, and assisting with all other activities of daily living. In essence, J.T.'s relationship with Children "was far beyond that of just a caregiver for Children." (***Id.***) J.T. was also the primary financial support for Children and Mother. When Mother died, Maternal Grandmother immediately called J.T. to pick up Children. Thus, even Maternal Grandmother recognized J.T. as the appropriate custodial adult for Children after Mother's death.

The court further noted that at the September 27, 2021 hearing, Father had the opportunity to examine J.T. on the witness stand and to present his own testimony and that of witnesses. The court rejected the claims by Father and Paternal Grandmother that Children have slept in Paternal Grandmother's house in Erie County every night of their lives. The court expressly stated "there [was] no basis to find the testimony of [Father] or [Paternal Grandmother] to be credible." (***Id.*** at 7). In sum, the court decided "[t]here

- 12 -

is no question [J.T.] has been *in loco parentis* to the Children their entire lives." (*Id.* at 8).

The record supports the court's analysis that J.T. had standing to pursue custody under Section 5324(2). *See* 23 Pa.C.S.A. § 5324(2); *R.M.G., Jr., supra*. Further, we defer to the credibility findings of the trial judge, who had the opportunity to observe the proceedings and the demeanor of the witnesses. *See id. See also M.J.S. v. B.B.*, 172 A.3d 651 (Pa.Super. 2017) (holding grandmother stood *in loco parentis* to Child and had standing to pursue custody under Section 5324(2) where grandmother, mother, and child lived together for five years as intact family unit and grandmother either shared or assumed sole parenting responsibility for entirety of child's life; record showed that grandmother fed, bathed, and entertained child daily, attended doctors' appointments, and transported child to kindergarten; grandmother also assisted child financially and has consistently been stabilizing force in child's life). Further, we reject Father's contention that J.T. acted *in loco parentis* to Children against Father's wishes. As this Court said in *M.J.S.*: "Through his own inaction, Father acquiesced to the development of the *in loco parentis* relationship between Grandmother and [Child]. … Stated another way, by failing to act while Grandmother raised his son, Father acted in a manner consistent with his consent to her *in loco parentis* status."

*M.J.S., supra* at 657.[7]  For all of these reasons, Father's second issue on appeal merits no relief.

In his third issue, Father contends the court's entry of "default judgment" relinquishing his parental rights was "in stark contrast to [legal] principles[.]"  (*Id.* at 10).  Father insists the court's entry of "default judgment" is "voidable" here.  (*Id.* at 16).  We disagree that relief is due.

Initially, it is unclear why Father refers to the custody order at issue as a "default judgment."  To the extent that Father is complaining about the court's temporary custody order after Father failed to attend mediation, the court subsequently held another mediation at which Father appeared, and ultimately held a *de novo* custody trial.  To the extent Father is complaining the court failed to evaluate the relevant custody factors in making its custody decision, the record belies that contention.  Rather, the record shows the court carefully considered each of the sixteen custody factors.  (*See* Opinion and Order, 1/26/22, at 3-6).  In its conclusion, the court stated: "[I]t is clear to this [c]ourt that [J.T.] has rebutted the presumption that custody shall be awarded to the parent.  She has rebutted the presumption with clear and convincing evidence.  It is in the best interest of the Children that they remain with [J.T.]"  (*Id.* at 6).  *See also* 23 Pa.C.S.A. § 5327(b) (stating that in any

---

[7] We note that Father seems to suggest J.T. lacked standing under Section 5324(3).  As we have already decided that J.T. had standing under Section 5324(2), we decline to confront Father's argument related to Section 5324(3).

action regarding custody of child between parent of child and nonparent, there shall be presumption that custody shall be awarded to parent; presumption in favor of parent may be rebutted by clear and convincing evidence).  We agree with the court's thorough analysis as detailed in the January 26, 2022 opinion and order.  Thus, Father's third issue merits no relief.

In his fourth issue, Father complains the court failed to dispose of the custody matter in a timely manner.  Father argues the custody matter was initiated on April 8, 2021, and that trial did not occur until January 24, 2022, through no fault of his own.  Father submits the custody complaint should have been dismissed on this basis.  Father concludes the court's custody order was improper, and this Court must grant him full and sole custody of Children. We disagree.

Pennsylvania Rule of Civil Procedure 1915.4 provides, in relevant part:

**Rule 1915.4.  Prompt Disposition of Custody Cases**

\* \* \*

**(b) Listing Trials Before the Court.**  Depending upon the procedure in the judicial district, within 180 days of the filing of the complaint either the court shall automatically enter an order scheduling a trial before a judge or a party shall file a *praecipe*, motion or request for trial, except as otherwise provided in this subdivision.  If it is not the practice of the court to automatically schedule trials and neither party files a *praecipe*, motion or request for trial within 180 days of filing of the pleading, the court shall, *sua sponte* or on motion of a party, dismiss the matter unless a party has been granted an extension for good cause shown, **or the court finds that dismissal is not in the best interests of the child**.  The extension shall not exceed 60 days beyond the 180 day limit.  A further reasonable

- 15 -

extension may be granted by the court upon agreement of the parties or when the court finds, on the record, compelling circumstances for a further reasonable extension. If an extension is granted and, thereafter, neither party files a *praecipe*, motion or request for trial within the time period allowed by the extension, the court shall, *sua sponte* or on the motion of a party, dismiss the matter **unless the court finds that dismissal is not in the best interests of the child**. A motion to dismiss, pursuant to this rule, shall be filed and served upon the opposing party. The opposing party shall have 20 days from the date of service to file an objection. If no objection is filed, the court shall dismiss the case. Prior to a *sua sponte* dismissal, the court shall notify the parties of an intent to dismiss the case unless an objection is filed within 20 days of the date of the notice.

**(c) Trial**. Trials before a judge shall commence within 90 days of the date the scheduling order is entered. Trials and hearings shall be scheduled to be heard on consecutive days whenever possible but, if not on consecutive days, then the trial or hearing shall be concluded not later than 45 days from commencement.

Pa.R.C.P. 1915.4(b), (c) (emphasis added).

Here, the court noted:

On December 2, 2021, [Father] filed a Motion to Dismiss in which he alleged that the custody complaint should be dismissed because the custody trial was not scheduled within 180 days of the filing of the custody complaint. By Order dated December 3, 2021, [the court] denied the Motion to Dismiss as it was abundantly clear that dismissal would not be in the best interest of the children. Additionally, the custody trial was delayed due to pre-trial litigation most of which was initiated by [Father].

(Rule 1925(a) Opinion, filed 3/15/22, at 1). We agree with the trial court that

no relief is due.

The record shows that J.T. filed the custody complaint on April 8, 2021.

On May 26, 2021, the court issued a notice of mediation. The case proceeded to mediation, which Father failed to attend. Father subsequently filed a request for a *de novo* hearing on June 25, 2021, claiming he had no notice of the mediation. Therefore, on July 13, 2021, the court scheduled a new mediation for August 9, 2021. Following mediation, Father again requested a *de novo* hearing. Paternal Grandmother subsequently filed a petition to intervene. In the meantime, Father challenged J.T.'s standing to pursue custody. Thus, on September 27, 2021, the court held a hearing to address J.T.'s standing. The court further sought to establish Father's standing by way of a paternity test, where there were questions concerning paternity. Once the standing issues were resolved, on December 6, 2021, the court scheduled the *de novo* hearing for December 29, 2021; and ultimately rescheduled the hearing for January 24, 2022, when it took place. We agree with the trial court that the lengthy pre-trial litigation in this case was the cause of any postponement of trial.

Additionally, the Rule expressly prohibits dismissal of a custody case where it is not in the best interests of the child. **See** Pa.R.C.P. 1915.4(b). We agree with the trial court that dismissal would not have served Children's best interests. Moreover, although the court technically failed to schedule the custody trial within 180 days of the filing of the custody complaint, factoring in the 180 days for scheduling and the 90 days thereafter in which to hold the hearing, the Rule contemplates a custody trial occurring within nine months

(absent any extensions). ***See*** Pa.R.C.P. 1915.4(b), (c). Thus, the court held the custody trial in the approximate timeframe contemplated by the Rule. Under these circumstances, we see no prejudice to Father. ***See M.S. v. J.K.***, No. 2282 EDA 2020 (Pa.Super. Aug. 17, 2021) (unpublished memorandum) (holding no relief was due where trial court failed to comply with language of Rule 1915.4(c) and did not complete custody hearings for more than two years after first hearing because father did not suffer prejudice).[8] Therefore, Father's fourth issue on appeal merits no relief. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/21/2022

---

[8] ***See*** Pa.R.A.P. 126(b).