J-A07011-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DOROTHEA BELL | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| KELLY BELL | : | |
| | : | |
| Appellant | : | No. 1256 MDA 2025 |

Appeal from the Order Entered August 12, 2025
In the Court of Common Pleas of York County Civil Division at No(s):
2024-FC-001763-03

BEFORE:  BOWES, J., DUBOW, J., and NEUMAN, J.

MEMORANDUM BY BOWES, J.:　　　　　**FILED: MAY 11, 2026**

Kelly Bell ("Mother") appeals *pro se* from the order awarding Dorothea Bell ("Maternal Grandmother") sole legal and primary physical custody of Mother's children, D.P., born in 2021, and R.P., born in 2022, while allowing Mother only partial supervised custody.[1]  Since the certified record does not reflect the application by the trial court of the statutory presumption in favor of Mother as the children's biological parent when awarding Maternal Grandmother primary physical custody, we are constrained to vacate in part and remand.

---

[1] Although the order was filed on August 8, 2025, notice was not given until August 12, 2025.  The Rules of Civil Procedure provide that an order shall be considered entered on "the day on which the clerk makes the notation in the docket that notice of entry of the order has been given as required by Pa.R.Civ.P. 236(b)."  Pa.R.A.P. 108(b).  Thus, we use August 12, 2025 as the pertinent date for the appealed-from order.  Accordingly, Mother's September 10, 2025 appeal was timely filed.

The court aptly summarized the underlying proceedings:

The current custody action began August 20, 2024, when [Maternal Grandmother] filed a custody complaint for L.R., an older child not at issue, in addition to D.P. and R.P. . . . Maternal Grandmother alleged that Mother was struggling with mental health and drug addiction after . . . Mother's husband passed away in January of 2024.

On September 26, 2024, the parties entered into a stipulated order for custody granting Maternal Grandmother sole legal custody and primary physical custody until Mother had completed her rehabilitation and a threat of harm evaluation. Mother had rights of partial supervised custody until her requirements were completed.

Maternal Grandmother filed a petition for modification and contempt on February 3, 2025. The petition alleged that Mother was sending insulting texts, screaming at her, and was still in active addiction.

Trial Court Opinion, 9/19/25, at 2 (cleaned up). Mother filed an answer asking that the petitions be denied and raising her own allegation of contempt regarding how she was permitted to exercise her periods of visitation.

The court held a one-day custody trial, at which Mother was represented by counsel. Stated briefly, Maternal Grandmother sought to keep the same custody arrangement as the parties had previously agreed upon, but to implement improved communication and require Mother's supervised visits to occur at a neutral or mutually-agreeable location. Meanwhile, Mother pursued additional supervisor approval and permission to have visits at her home under the present arrangement. In her testimony, Mother asserted that she had complied with the requirements stated in the stipulated order and desired

to have her sole legal and physical custody rights as to D.P. and R.P. restored as soon as possible.

Prior to the start of testimony, Mother's counsel raised an irreconcilable conflict impairing her ability to represent Mother. *See* N.T. Custody Trial, 7/30/25, at 4. Specifically, counsel had advised Mother that she would not file a requested motion to terminate the stipulated custody order because counsel believed it was a "baseless motion[.]" *Id*. at 5. Counsel elaborated:

> [Mother] believes that fitness and mental health and substance issues are not the issue and that she will somehow convince the court to reverse the order that was entered by stipulation and that as a result of that, that the court would also consider that the award of grandparent custody is contrary to her fundamental right to raise her child as a parent.
>
> . . . .
>
> The problem is all of the case law presumes – regarding constitutionality of third parties intruding into custody rights presumes that a parent who is challenging it would be fit, and I don't believe that my client is going to be able to establish that by the preponderance of the evidence.
>
> . . . .
>
> [W]ith respect to Mother's claim for a modification of the order to reverse the supervision and award her back custody of the children, I believe that that is what cannot be established.

*Id*. at 7-9.[2] Following a discussion during a recess, Mother chose to continue with counsel's representation at trial and not to pursue the motion. *Id*. at 19.

During the trial, the court primarily heard testimony from Mother and Maternal Grandmother. Mother maintained that she had undergone the necessary rehabilitative programs for her self-described eating disorder, complied with her prescribed medications for her mental health diagnoses, did not have a substance abuse problem, and did not need professional help for therapeutic treatment. She desired to regain custody of her children and assailed Maternal Grandmother's accusations against her and for keeping her children from her. Maternal Grandmother, for her part, expressed concern about Mother's ability to safely parent and, while she did not intend or want to raise the children forever, she would do so until Mother was again able to do so.

Even through the cold record, the strain on the relationship between Mother and Maternal Grandmother was palpable during the trial. For example, the court frequently advised Mother to compose herself during unfavorable testimony. Additionally, Maternal Grandmother testified that Mother berated

---

[2] Concerningly, counsel's statements suggest that instead of Maternal Grandmother having to overcome the presumption in favor of biological parents against third parties by clear and convincing evidence, as 23 Pa.C.S. § 5327(b) mandates, Mother could only invoke that presumption if she first proved fitness by a preponderance of the evidence. As will be borne out by our discussion *infra*, that would be a gross misreading of the burdens of proof for the § 5327(b) parental presumption.

her in front of the children on several occasions, including episodes where Mother screamed at Maternal Grandmother and banged on the windows of the house after Maternal Grandmother brought the children inside and away from Mother's volatile behavior. While Maternal Grandmother stated she was willing to attend family therapy with Mother, Mother was not so inclined. At most, she acknowledged to the court after much prodding regarding the potential benefits counseling could have on their relationship, "I played nice. I can do so again." *Id*. at 186-87.

Although under the stipulated order Mother was entitled to twenty-four hours per week with the children, she regularly exercised less than half of that. At the same time, Maternal Grandmother often took the children on vacation, depriving Mother of some of her scheduled time. Patricia Pinning ("Paternal Grandmother") generally supervises Mother's visits with the children at Mother's home and testified on her behalf. She noted concerns about supervising at Mother's home and expressed a preference for doing so at her own residence because she would have more control and situational awareness. On cross-examination, Paternal Grandmother described one instance in the past when she had suspected Mother to be under the influence but had not recently had any such concerns. She also detailed how Mother had screamed at Maternal Grandmother in front of the children on one occasion, visibly upsetting them.

Since Paternal Grandmother resides part-time in Florida and cannot supervise from there, Mother offered her then-current housemate as a potential substitute. At the conclusion of the hearing, the court rejected her housemate as a supervisor for Mother's visits. Maternal Grandmother requested Mother instead use a professional supervisor at a neutral site, but the court also rejected those limitations.

Finally, the court heard from Officers Robert Swartz and Ross Casteel of the Southern Regional Police Department. Both officers had responded to Mother's multiple 911 calls. Officer Casteel relayed that he was dispatched to Mother's house on Christmas Day 2024, because Maternal Grandmother's husband had allegedly assaulted her. However, the investigation revealed that Mother had become aggressive during a visit, prompting Maternal Grandmother to leave the home with the children. When she did so, Mother became hysterical and physically tried to stop them by chasing them with small wooden boards. As a result, Maternal Grandmother's husband had pushed Mother and restrained her so that Maternal Grandmother and the children could depart safely. While not the focus of the domestic disturbance call, the officer noted that upon his arrival, Mother's house smelled strongly of burnt marijuana and he saw a smoking pipe.[3]

---

[3] Mother testified that she has a medical marijuana card, but the trial court reminded her that the Medical Marijuana Act does not permit individuals to smoke marijuana.

- 6 -

On two subsequent occasions, Mother called for assistance following an argument with her intoxicated friend. Mother was not present either time when Officer Casteel responded, but the subject individual was found to be in possession of a crack pipe on one occasion, and a large amount of alcohol the other. Officer Swartz, meanwhile, testified that during his separate interactions with Mother, she did not appear to be under the influence.

In an order and opinion entered on August 12, 2025, the court awarded Maternal Grandmother sole legal and primary physical custody, and granted Mother partial supervised custody. Additionally, Mother was mandated to undergo evaluations for mental health and drugs and alcohol. In response to the contempt motions, the court directed the parties to utilize Our Family Wizard and attempted to otherwise curtail the direct interactions between Mother and Maternal Grandmother in front of the children.

On August 15, 2025, Mother sought to remove counsel and *pro se* filed a petition for contempt, petition to modify custody, and petition for special relief. These petitions were denied and Mother was advised that if she was dissatisfied with the custody order, she should appeal to this Court. **See** Order, 8/26/25. Thereafter, Mother filed *pro se* petitions to vacate the custody order as void because it constituted a violation of her constitutional rights as the mother of D.P. and R.P. The court denied that request and, on the same day, Mother filed a timely notice of appeal from the August 12, 2025 order,

- 7 -

along with a concise statement. The trial court authored a responsive opinion pursuant to Pa.R.A.P. 1925(a).

In this Court, Mother presents the following issues in her statement of questions:

1. Whether the trial court abused its discretion by awarding primary physical custody to a non-parent, where no finding of parental unfitness was made and the statutory parental presumption under 23 Pa.C.S. § 5327(b) was ignored[.]

2. Whether the trial court violated [Mother]'s constitutional rights to due process and family association under the First and Fourteenth Amendments by relying on personal impressions, hearsay, and speculative testimony rather than admissible evidence[.]

3. Whether the trial court erred as a matter of law by misapplying the best-interest factors under 23 Pa.C.S. § 5328(A), giving controlling weight to credibility findings unsupported by the record and discounting objective evidence favorable to [Mother].

4. Whether the trial court's order is void *ab initio* under **Commonwealth v. Gross**, 611 A.2d 1360 (Pa. 1992),[4] where it was entered in the absence of jurisdictional compliance with due-process standards and without competent evidence establishing a basis to restrict [Mother]'s parental liberty.

Mother's brief at 12-13. Although she raises four issues, she divides her argument into three sections that do not neatly align with those four issues. It is axiomatic that "[n]o question will be considered unless it is stated in the statement of questions involved or is fairly suggested thereby." Pa.R.A.P. 2116(a); *see also* Pa.R.A.P. 2101. Accordingly, we first assess which of the

_____

[4] We note that our research indicates this case does not exist, at least as cited. **See also** Maternal Grandmother's brief at 21 (noting the cited case "has proven to be unlocatable").

- 8 -

issues Mother develops in the argument section of her brief are properly before us.

Upon review, we deduce that Mother's complaints are threefold: (1) the stipulated order was void *ab initio*, thereby also rendering the subject custody order void; (2) the trial court erred in failing to apply the § 5327(b) parental presumption before awarding Maternal Grandmother primary physical custody; and (3) the trial court improperly weighed the custody factors by crediting only Maternal Grandmother's speculative testimony. Since the validity of the prior stipulated order is not even remotely suggested by the statement of questions, we will not address that contention. *See* Pa.R.A.P. 2116(a). Conversely, we conclude that Mother has preserved her second and third arguments. We begin with her claim that the court failed to apply the statutory presumption because it is dispositive.[5]

The following legal principles guide our analysis of this issue:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether

---

[5] We recognize that Mother's prayer for relief includes a request that we find Maternal Grandmother lacks standing to seek custody. Notwithstanding that demand, Mother has made no argument in support thereof and her statement of questions cannot be read to advance any issue pertaining to Maternal Grandmother's standing. Accordingly, we have no cause to consider this plea.

the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*White v. Malecki*, 296 A.3d 1210, 1213 (Pa.Super. 2023) (cleaned up).

The Child Custody Law imposes certain "presumption[s] in cases concerning primary physical custody[.]" 23 Pa.C.S. § 5327. Pertinent to this case is the rebuttable presumption in favor of parents over third parties: "In any action regarding the custody of the child between a parent of the child and a nonparent, there shall be a presumption that custody shall be awarded to the parent. The presumption in favor of the parent may be rebutted by clear and convincing evidence." 23 Pa.C.S. § 5327(b). We have defined that evidentiary burden "as presenting evidence that is so clear, direct, weighty, and convincing so as to enable the trier of fact to come to a clear conviction, without hesitation, of the truth of the precise facts in issue." *M.J.S. v. B.B.*, 172 A.3d 651, 660 (Pa.Super. 2017) (cleaned up).

Before being so codified, this rebuttable presumption existed at common law. In instructing trial courts on how to apply § 5327(b), we have reiterated the same method developed at common law: "What the judge must do, therefore, is first, hear all evidence relevant to the child's best interest, and then, decide whether the evidence on behalf of the third party is weighty enough to bring the scale up to even, and down on the third party's side." *V.B. v. J.E.B.*, 55 A.3d 1193, 1199 (Pa.Super. 2012) (cleaned up).

In the matter *sub judice*, Mother argues that the trial court failed to apply the parental presumption before assessing the custody factors outlined

- 10 -

in 23 Pa.C.S. § 5328. **See** Mother's reply brief at 3. She contends that the court made no finding by clear and convincing evidence that she was unfit to parent her children, and that the court's reliance on "forward-looking speculation" and "stale events from 2024[,] without competent evidence of present harm at the time of adjudication, cannot overcome the parental presumption." **Id**. at 4; **see also** Mother's brief at 21-23.

Our review confirms that the trial court made no explicit determination regarding the parental presumption either at trial or in its opinion accompanying the August custody order, and therefore it appears that the court improperly weighed the custody factors as if Mother and Maternal Grandmother were on equal footing. Notwithstanding this impression, the court purported to clarify in its Rule 1925(a) opinion that it had, in fact, considered the presumption when conducting its analysis:

> The court was satisfied in this case that Maternal Grandmother established by a clear and convincing standard that she was entitled to sole legal and majority physical custody, especially as it related to the mental health of Mother at this time and, to a lesser but important degree, as it relates to the use of Adderall in a manner inconsistent with typical prescribed use. These factors were discussed in the opinion issued in support of the order at pages [twelve to fourteen]. The order mandates interventions for Mother in the form of a mental health evaluation and a drug and alcohol evaluation and compliance with recommended treatment.

Trial Court Opinion, 9/19/25, at 5 (cleaned up).

However, this judgment appears to be made wholly in hindsight because our review of the court's best-interests analysis simply does not evince application of the parental presumption. **See V.B.**, 55 A.3d at 1200

- 11 -

(concluding that "nothing in the record supports the trial court's after-the-fact assertion that it considered the heightened standard of production when it issued the custody order"). In this regard, we find our decision in **M.J.S.** to be particularly instructive. Therein, the grandmother intervened in the father's petition that he had filed against the mother for primary custody of their child. We affirmed the court's determination that the grandmother had standing to seek custody because she stood *in loco parentis* to the child. In considering the father's challenge to the court's best-interest analysis, however, we agreed with him that the court neglected to separate the roles of the grandmother and the mother in weighing the requisite custody factors, did not apply the parental presumption in favor of the father, and improperly placed the burden of proof on the father.

Relevantly, we held:

[T]he trial court undeniably ignored the presumption favoring Father over Grandmother pursuant to § 5327(b). . . .

Preliminarily, we observe that the fact that Grandmother attained standing through *in loco parentis* status does not alter her role as a third-party challenger to Father's request for primary physical custody. As suggested by our Supreme Court . . . , *in loco parentis* status merely provides a third party an opportunity to establish that maintaining that relationship supersedes the birth parent's opposition. The High Court observed, where an *in loco parentis* relationship is shown, our courts recognize that the child's best interest requires that the third party be granted standing so as to have the opportunity to litigate fully the issue of whether that relationship should be maintained even over a natural parent's objections. Significantly, neither the Supreme Court's discussion . . . nor the text of § 5327(b) indicates that *in loco parentis* status effectively places a third-party on equal footing with a birth parent. To the contrary, § 5327 provides that the presumption

- 12 -

applies "[i]n **any** action regarding the custody of a child between a parent of the child and a nonparent[.]" 23 Pa.C.S. § 5327(b) (emphasis added). If our legislature desired to carve an exception to the presumption when the nonparent attained *in loco parentis* status, it could have done so; however, it did not. Thus, for all of the foregoing reasons, the trial court erred in failing to apply the presumption in Father's favor pursuant to § 5327(b).

**M.J.S.**, 172 A.3d at 660 (cleaned up).

Given this and other errors, we reversed and remanded the matter to the trial court instead of conducting our own merits analysis, reasoning thusly:

[T]he trial court's best-interest analysis is contrary to at least three entrenched principles of our custody jurisprudence. Accordingly, we reverse the order awarding Grandmother primary physical custody of L.M.S. and remand the matter for a best-interests determination that conforms with the Child Custody Law and prevailing precedent. While Father entreats that this Court decide the case on its merits and award him primary physical custody, we decline to analyze the relevant statutory best-interests factors in the first instance. Although this Court has engaged in merits determinations based upon the certified record in limited situations where the outcome is obvious, such is not the case herein. Contrary to Father's protestations, it is not clear from the certified record that the presumption in his favor is insurmountable in light of the testimony that Grandmother either performed or shared all aspects of raising L.M.S. since birth. If accepted as true, these allegations could form the clear and convincing evidence required to rebut the statutory presumption. We leave that determination to the trial court, who is the ultimate arbiter of fact.

*Id*. at 661. **See also Wolfe v. Wilson**, 285 A.3d 919, 2022 WL 4113116, at *3 (Pa.Super. 2022) (non-precedential decision) ("The question of whether nonparents rebutted the statutory presumption in favor of a parent must be resolved by the trial court[.]" (cleaned up)); **but see V.B.**, 55 A.3d at 1200-05 (proceeding to consider whether the grandparents' evidence was sufficient to overcome the parental presumption despite the trial court failing to apply

- 13 -

it in the first instance and concluding that the trial court's post-*hoc* conclusion that the grandparents had met that burden was unsupported by the record).

Here, the trial court stated in its Rule 1925(a) opinion that it had applied the presumption in awarding Maternal Grandmother primary physical custody. Despite that assertion, the opinion accompanying the custody order made absolutely no mention of the presumption. Furthermore, the court's initial review of the custody factors contains no suggestion that it first weighed them in Mother's favor. Rather, the court discussed each factor and, save for those it deemed favorable to neither party, proceeded to weigh every factor in favor of Maternal Grandmother. In doing so, it offered no hint that it had started by presuming the factor leaned towards Mother or even recognized that Mother had primary custody of the children without incident until their father had died. In other words, we can glean no sign that the court started its analysis with the factors in Mother's favor but nonetheless determined that Maternal Grandmother's evidence was "weighty enough to bring the scale up to even, and down on [Maternal Grandmother's] side." *V.B.*, 55 A.3d at 1199 (cleaned up). Thus, the certified record does not support the court's statement in its Rule 1925(a) opinion that it applied the § 5327(b) presumption when weighing the custody factors. Since the trial court abused its discretion in awarding Maternal Grandmother primary physical custody

without applying the parental presumption, we must vacate the August 12, 2025 custody order.[6]

Mother asks us to remand with directions for the trial court to restore full legal and physical custody of D.P. and R.P. to her. *See* Mother's brief at 37. Based upon our review of the record, Maternal Grandmother may very well overcome the parental presumption if Mother has not yet remedied the myriad issues she demonstrated during the custody trial and which concerned the trial court. Therefore, as in **M.J.S.**, the proper course of action is to send this matter back to the trial court to determine whether Maternal Grandmother has overcome the presumption in favor of Mother. Thus, we remand for the court to apply the § 5327(b) presumption when weighing the custody factors.

_____

[6] To clarify, we vacate only the portion of the order awarding Maternal Grandmother primary physical custody, thereby reverting the custody schedule back to that set forth in the stipulated order for the time being. We do not disturb the remainder of the August 12, 2025 order that required, *inter alia*, the parties to utilize Our Family Wizard and Mother to undergo certain evaluations.

Order vacated in part. Case remanded for further proceedings. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: <u>5/11/2026</u>